KNAPP MONARCH COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 106797, 107239. Promulgated November 18, 1942.

*J. Spencer Wolling, Esq.*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

OPINION.

TURNER, *Judge:* The question here is whether cash paid and common stock issued to preferred stockholders as a part of the consideration for the exchange by them of $3.25 preferred stock for $2.50 preferred stock constituted a taxable dividend in the hands of petitioner's stockholders. If so, the petitioner is entitled, under section 27 (a) [1] and (e) [2] of the Revenue Act of 1936, to a dividends paid credit to the extent of cash plus the fair market value of the common stock so issued. If not, petitioner's claim of credit must be denied. Sec. 27 (h). [3]

It is the claim of the respondent that surrender by the preferred stockholders of the old preferred stock and the receipt of the new preferred, plus common stock and cash, were steps in a reorganization, namely, a recapitalization, within the meaning of section 112 (g) (1) (D) of the statute, that the old preferred stock was surrendered in exchange for new preferred stock and common stock pursuant to the plan of reorganization, and under section 112 (b) (3), [4] the gain or income therefrom is not taxable. The petitioner concedes that there was a recapitalization and therefore a reorganization within the meaning of the statute. It contends, however, that the issuance of the half shares of common stock to the preferred stockholders was outside the reorganization and not a part of the exchange of the old preferred stock for the new preferred but was the payment of a taxable dividend separate and apart from the exchange and therefore outside the scope of section 112 (b) (3). The respondent makes no claim that the petitioner did not have accumulated earnings or prof-

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

[2] (e) TAXABLE STOCK DIVIDENDS.—In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment.

[3] (h) NONTAXABLE DISTRIBUTION.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.

* * * * * * *

(b) EXCHANGES SOLELY IN KIND.—

* * * * * * *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

its within the meaning of section 115 (a)[5] sufficient to cover a dividend of both the cash paid and the half shares of common stock herein issued. Neither is there any claim that the common stock was nontaxable because of a stock dividend within the meaning of the Sixteenth Amendment to the Constitution. Sec. 115 (f) (1).[6] If therefore the petitioner is correct in its claim that the issuance of the common stock to the old preferred stockholders was outside the reorganization and not a part of the exchange, its contention that the common stock was a taxable dividend is well taken, sections 115 (a), *supra*, and (f) (2),[6] and it is entitled to the dividends paid credit claimed in respect thereto.

The petitioner rests its claim that the issuance of the half shares of common stock to the holders of the old preferred stock was outside the reorganization and not a part of the exchange, under section 112 (b) (3), *supra*, on the facts, and in its brief summarizes the facts as follows: "However, the facts disclose that the recapitalization was concluded on September 12, 1936, when the notice * * * was sent to the shareholders and informed them that their preferred shares were immediately exchangeable for new preferred shares and no mention was made of any other property, either in stock or otherwise, as being an incidental part of the exchange." Later in the brief and in further support of its claim that the issuance of the new preferred stock and the half shares of common stock to the holders of the old preferred were two separate and distinct transactions, it is stated that "For all practical purposes the separation of three days distinguishes actions and nothing in the record indicates that either was dependent upon the other for accomplishment."

The major difficulty with the proposition stated is that the record shows the facts to be exactly the opposite. At the time the plan of

---

[5] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

[6] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

(2) ELECTION OF SHAREHOLDERS AS TO MEDIUM OF PAYMENT.—Whenever a distribution by a corporation is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either (A) in its stock or in rights to acquire its stock, of a class which if distributed without election would be exempt from tax under paragraph (1), or (B) in money or any other property (including its stock or in rights to acquire its stock, of a class which if distributed without election would not be exempt from tax under paragraph (1)), then the distribution shall constitute a taxable dividend in the hands of all shareholders, regardless of the medium in which paid.

reorganization was determined upon the preferred stock outstanding was the $3.25 preferred, with accumulated arrearages of dividends thereon amounting to approximately $7.65 per share. There was no proposal, and apparently no thought or intention, that the holders of such preferred stock would or should surrender such shares solely for the new $2.50 preferred stock, and certainly there is no indication that the holders of the old preferred stock would have agreed to such a proposal or would have made such an exchange if it had been proposed. The stockholders themselves on August 17, in establishing the plan, form, and substance of the recapitalization and in authorizing the directors to carry it out, provided that part of the consideration to be received in exchange for the old shares of preferred stock was to be the half shares of common stock, and in one of the resolutions that day adopted stated that the issuance of the half shares of common stock to the old preferred stockholders would be "in consideration of their exchange of the $3.25 preferred stock for the $2.50 preferred stock, with such options and elections, and at such time as to the Board of Directors may appear proper and expedient, in order to carry out the proposition submitted to the holders of the old preferred stock, and as voted at this meeting." That the half shares of common stock were a part of the consideration passing in exchange for the old preferred stock and were so considered by all parties concerned was again indicated by the letter of September 12, on which the petitioner so strongly relies and wherein it was stated that the half shares of common stock would be issued to the preferred stockholders "in lieu of the dividend arrearage" on the old preferred and "in conformity with the plan approved by our stockholders at the special meeting of August 17, 1936." Furthermore, in requesting the holders of the old preferred stock to mail their old certificates to the petitioner's transfer agent in St. Louis, Missouri, those holders were assured that the directors within three days would take the necessary action to see that the remainder of the consideration, namely, the half shares of common stock, to be received in exchange for their old preferred shares would very shortly be forthcoming. To say that the holders of the old preferred stock surrendered their old preferred shares in exchange only for the shares of new preferred would require the rewriting of the plan of reorganization, a revision of the agreement which the corporation, through the stockholders' resolution of August 17, had with the holders of the old preferred shares, and a changing of the consideration prescribed and actually passing therefor. Since the common stock was in fact issued pursuant to the plan of reorganization and was a part of the consideration for the exchange of the old preferred stock, and, being the shares of the corporation reorganized, the exchange falls squarely within the provisions of section 112 (b) (3), *supra*. *South Atlantic*

*Steamship Line*, 42 B. T. A. 705; *Skenandoa Rayon Corporation*, 42 B. T. A. 1287; *J. Weingarten, Inc.*, 44 B. T. A. 798; and *Humphryes Manufacturing Co.*, 45 B. T. A. 114.

The petitioner urges, however, that a different rule obtains here and that the issuance of the common stock was outside the reorganization and therefore a taxable dividend, because in effecting the issuance of the new preferred stock and the half shares of common stock for the old preferred stock it was contemplated that the half shares of common stock should take the form of a dividend on the new shares of preferred stock; that a formal dividend resolution to that effect should be and was adopted and spread on the minutes of the corporation and the half shares of common stock were issued pursuant thereto. The same argument was advanced by the Commissioner in *Commissioner* v. *Kolb*, 100 Fed. (2d) 920, and was rejected. Under the plan in that case, the stock of the New York Co. was to be reclassified and debenture bonds were to be issued against its surplus. The new stock and debentures were to be issued to Maryland Corporation for substantially all of its assets. Maryland was then to be dissolved and the stock and debentures of New York distributed in liquidation. The debentures so distributed to the preferred stockholders of Maryland were to be in lieu of arrearages in dividends. The plan provided that New York, in issuing its new common stock and debentures to Maryland for its assets, should issue the debentures in the form of a dividend on the new common stock and that a formal dividend resolution to that effect should be adopted. The dividend was declared and pursuant to the dividend resolution the debentures were issued as contemplated. On that state of the facts, the Commissioner argued that the debentures were outside and not an essential part of the reorganization or any exchange therein, that the nonrecognition provisions of section 112 were accordingly not applicable, and that the debentures constituted a taxable dividend. Regardless of the fact that the debentures were distributed in the form of a dividend and pursuant to the declaration of a dividend, the court rejected the contention of the Commissioner and held that the issuance of the debentures was nevertheless a part of a single transaction constituting the reorganization and therefore subject to the nonrecognition provisions of section 112. It is no answer to say, for the purpose of distinguishing the instant case, that in *Commissioner* v. *Kolb* the exchange in issue was the exchange by Maryland stockholders of their stock in liquidation. The liquidation of a corporation is not in and of itself a reorganization and standing alone the taxability of distributions in liquidation are determined under section 115 (c), and the nonrecognition provisions of section 112 are not applicable. In *Commissioner* v. *Kolb*, it was the exchange of the New York shares and debentures for the assets of Maryland which

made the transaction a reorganization and fixed the character of the New York shares and debentures as the securities of a corporation a party to the reorganization, not the exchange in liquidation of Maryland. The court pointedly rejected the claim that the issuance of the debentures under the dividend resolution made any difference. It looked to the "ultimate consequence" and observed: "There is continuity of the taxpayer's interest in the corporate enterprise both by virtue of the stock and the 10-year bonds of the New York Company." In the instant case the petitioner's stockholders started the transaction as the owners of the $3.25 preferred stock and at the conclusion of the transaction were the owners of new $2.50 preferred stock and the half share of common stock in place of the old preferred stock previously held. The new preferred stock and the common shares were received as the consideration in a single transaction and there was continuity of interest in the corporate enterprise (the petitioner) both by virtue of the new $2.50 preferred stock and the half shares of common stock. That the common stock so issued in partial exchange for the old preferred stock was also a dividend and so denominated by a resolution spread on the minutes of the petitioner is not of any moment. The half shares of common stock were none the less the shares of a corporation a party to the reorganization exchanged "in pursuance of the plan of reorganization * * * for stock * * * in such corporation," and under section 112 (b) (3), the income represented thereby is not to be recognized. See also *Commissioner* v. *Food Industries, Inc.*, 101 Fed. (2d) 748; *Commissioner* v. *Schoellkopf*, 100 Fed. (2d) 415; and *Commissioner* v. *Leary*, 97 Fed. (2d) 1004, which involved exactly the same transaction as in *Commissioner* v. *Kolb, supra*, and in which both the Board of Tax Appeals and the courts reached the same conclusion. In *Elizabeth Morainville*, 46 B. T. A. 753, the issue and the facts were substantially similar to the issue and facts in this case, and, since the reasoning and conclusions there are in conflict with the reasoning and conclusions here expressed, that case is accordingly overruled.

With respect to the cash distribution of $3,252 in 1936, the decision must be for the petitioner. Sec. 112 (c), Revenue Act of 1936.[7] As we have pointed out, the respondent has at no place contended that the petitioner did not have sufficient earnings and profits available for the distribution of a dividend in the amounts here claimed. Under section 112 (c) (2), it is provided that where a distribution is made

---

[7] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    *      *      *      *      *      *      *

  (c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

  (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were. not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the

pursuant to a plan of reorganization "but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913." It thus appears that to the extent of the cash distributed there was the payment of a taxable dividend and the petitioner is entitled under section 27 (a), *supra*, to a dividends paid credit therefor.

It is the further contention of petitioner that regardless of the merits of the controversy herein the respondent is bound by his former ruling to the effect that the issuance of the common stock to the recipients of the new preferred stock did constitute payment of a taxable dividend and that the petitioner is therefore entitled to a dividends paid credit in respect thereof. The petitioner makes no claim that the determination herein was not made within the period of the statute of limitations, but argues that the respondent may not change his ruling of November 24, 1936, even though it was erroneous. The essential elements of estoppel are not here present and the statute plainly shows that the Commissioner not only may correct an erroneous ruling within the period of the statute of limitations, but is expected to do so. In that connection we need look no further than section 271 [8] of the statute, wherein Congress defines the term "deficiency."

No evidence was offered with respect to the $5,000 deduction claimed by the petitioner for 1936 and described as reorganization expenses. Neither was any mention made of it in the petitioner's brief. We assume therefore that the issue has been abandoned and sustain the action of the respondent in disallowing the deduction.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

OPPER, *J.*, dissents.

_____

STERNHAGEN, *J.*, concurring only in the result: In my opinion, the decision in *Elizabeth Morainville*, 46 B. T. A. 753, should not be over-

recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

[8] SEC. 271. DEFINITION OF DEFICIENCY.

As used in this title in respect of a tax imposed by this title "deficiency" means—

(a) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; * * *

ruled, for the facts in the two cases are different. The dividend of two shares in the *Morainville* case was separately and unconditionally declared to discharge the accumulated unpaid dividends on the preferred shares. There was no such ambigous attempt as in the present case to declare a dividend "in consideration of the exchange of" the old shares for new as an integral part of a statutory reorganization exchange. The *Morainville* dividend was not a part of the consideration in the exchange, but was payable as a dividend to all preferred shareholders in discharge of the arrears. It was received by the shareholders as a dividend, and was, I think, properly taxable to them as such, even though the corporation was contemporaneously issuing other shares in a recapitalization. The decision to that effect was in accord with the prior authorities.

There is no necessity for an all-embracing rule that a payment of dividends in arrears may not be recognized as such if it is made contemporaneously or in conjunction with a recapitalization or other statutory reorganization. As long as the evidence shows that the two things, the dividend and the exchange, were separately done and there is no circumstance requiring doubt of *bona fides*, I see no reason why they may not be recognized as separate, one as a dividend and the other as an exchange in reorganization, each with its separate tax effect. Either the shareholders are taxable on the dividends or the corporation gets no dividends paid credit, so the tax effect throws no great light on the motive or the legal character of the payment.

In the present case the alleged payment of the dividend is not clearly declared or treated as such, but is expressly stated and shown to be a factor in the reorganization exchange. The petitioner is, therefore, not in position to claim the dividends paid credit, for the receiving shareholders would, upon the same evidence, not be taxable upon the "dividends."

MELLOTT, *J.*, agrees with the above.