THE OKONITE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109998. Promulgated January 29, 1945.

*Edmund S. Kochersperger, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

626

### OPINION.

Van Fossan, *Judge*: The first question for determination is whether petitioner's method of accounting correctly reflects income with reference to its transactions in reels.

In addition to the contract price of goods sold, petitioner charged fixed amounts for the reels on which its wire and cable were shipped. These fixed amounts were in excess of the actual cost of the reels. This profit was placed in a reserve account styled "Reel Contingent Profit Reserve." As reels were returned the petitioner deducted from the account the amount of profit previously added for reels shipped. The net increases to the account for 1936 and 1937 were $23,322.22 and $12,261.05, respectively. Petitioner's experience had shown that ultimately 90 percent of all reels were returned. Instead of returning as income the actual additions to this profit account, the petitioner adopted the practice of returning an amount equal to 10 percent of the gross additions to the account. Petitioner thus returned $15,514.56 and $17,990.78 for the taxable years.

The Commissioner added the amounts of $23,322.22 and $12,261.05 to income for the years 1936 and 1937, respectively, as representing additions to the account "Reserve for returnable reels."

The issue as now drawn presents the question whether the petitioner's income is reflected more clearly by including therein an arbitrary 10 percent of the total additions to the "Reel Contingent Profit Reserve" for each year, as proposed by petitioner, or by including in gross income the actual net additions to the reserve, as proposed by the respondent:

The petitioner contends that its 10 percent basis is justified by its experience, which shows that 90 percent of the amounts received for reels, including the profit on such reels, will have to be returned to the customers at a later date. The respondent argues that there was a sale of the reels and that the actual net increase in the reserve is income for each year.

It is settled that a reserve for returnable containers will not be allowed where it appears that there is an absolute sale of the container to the customers, subject to the customers' right to resell the container to the manufacturer. *La Salle Cement Co.* v. *Commissioner*, 59 Fed. (2d) 361; *Beadleston & Woerz, Inc.*, 5 B. T. A. 165; *Iten Biscuit Co.*, 25 B. T. A. 870; *Plymouth Brewing & Malting Co.*, 16 B. T. A. 123.

There can be no doubt that the reels in the instant case were sold. There is nothing to show that the petitioner in any way retained title to them. The customer was charged the standard price for the reel and was free thereafter to keep it, to sell it elsewhere, or to return it to the petitioner. The petitioner agreed to repurchase at the original price those reels which were returned in good condition within 12 months from the date of shipment. Those that were returned in need of repair would be accepted only at the petitioner's option. It is admitted that there was no way in which the customer could be forced to return the reels. A significant fact is that petitioner denominates itself in its price list of reels as the "seller." It is clear to us that there was in each case a sale of the reel to the customer and a resale to the petitioner.

It is also clear to us that petitioner's system of accounting for profit on the reels sold, by which it returns for taxation an arbitrary approximation of 10 percent of gross profit earned, does not accurately reflect income. By reference to the record it is readily established that the petitioner's income from the sale of reels during 1936 and 1937 was understated. On the other hand, petitioner, on whom rests the burden, has not demonstrated that respondent's method of accounting will not accurately reflect income if consistently applied over the years. Accordingly, we sustain the respondent's action.

The next question is whether petitioner is entitled to a dividends paid credit under the provisions of section 26 (c) (1) or section 26 (c) (2) of the Revenue Act of 1936. The contention is made in various alternatives. The applicable statutory provisions are set forth in the margin.[1] Petitioner contends that the statutory credit is allowable

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of a taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. \* \* \*

because prior to declaration of dividends it was compelled to contribute to the sinking fund either cash or debentures purchased for cash under a contract which, it contends, satisfies the requirements of either paragraph (1) or (2) of section 26 (c). The claim for credit as to the preferred stock is confined to section 26 (c) (2).

Assuming that petitioner otherwise qualifies for credit under section 26 (c) (1), application of the specific statutory terms to petitioner's financial situation is, however, fatal to petitioner's contention. The statute limits the credit to "the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends," etc. In Regulations 94 the Commissioner has indicated how such credit should be computed.

At the beginning of 1936 the petitioner had surplus and undivided profits of $559,044.62. The respondent computed the petitioner's "adjusted" net income for surtax computation for the year 1936 to be $584,332.05, which, added to the surplus, makes total earnings of $1,143,376.67 available for dividends. The petitioner claimed a corresponding adjusted net income of $570,936.81. During 1936 the petitioner made payments on account of the sinking fund aggregating $104,500; at the end of that year it was in arrears as to these requirements by $14,000, making total sinking fund obligations for 1936 of $118,500. It is clear that, after deducting this amount from the petitioner's earnings for 1936, it still retained a distributable balance of current and past earnings far in excess of its adjusted net income for that year.

A similar situation existed in 1937. In that year petitioner's "adjusted" net income, as computed by the respondent, was $702,065.42, and by the petitioner was $688,790.76. Its surplus and undivided profits at the beginning of that year were $592,069.98, making total earnings of $1,294,135.40 according to the respondent's figures. Its sinking fund requirements for that year were $70,000. Consequently, after making provision for these requirements, it still retained a balance of $1,224,135.40, which could have been distributed. This amount was greatly in excess of its net income for that year.

It follows that under the precise language of the statute the petitioner is not entitled to the credit under section 26 (c) (1), either for 1936 or 1937. Cf. *Central West Coal Co.*, 44 B. T. A. 661; *Thew Shovel Co.*, 45 B. T. A. 920.

The petitioner's contention that the credit should be allowed under section 26 (c) (2), *supra*, is equally untenable. That section grants a credit in an amount equal to that portion of the earnings and profits of the taxable year which is required to be paid or set aside within the taxable year in discharge of a debt, to the extent so paid or set aside. In the present case there is no requirement that the payments for the

retirement of the bonds be made from the earnings or profits of the current year. They could be paid out of earnings accumulated from prior years or from any other source at the petitioner's disposal. The absence of such a requirement prohibits the allowance of the credit. *A. E. Staley Manufacturing Co.*, 46 B. T. A. 199; *C. A. Roberts Co.*, 44 B. T. A. 605; *Lafayette Hotel Co.*, 43 B. T. A. 426; *Hub Clothing House, Ltd.*, 39 B. T. A. 900.

The petitioner also contends that it is entitled to credit under section 26 (c) (2) for 7 percent and 6 percent preferred stock purchased in 1936 and 1937 for retirement through the sinking fund. The statutory requirement is that amounts so paid or set aside must be "in discharge of a debt." Therefore, the answer depends in part upon whether the preferred stock constituted capital investment or an evidence of indebtedness. The stock had no fixed date of maturity. The dividends were payable only out of earnings when and if declared by the board of directors and were not payable out of funds at all events, a provision characteristic of interest. The stock had no priority over the claims of the general creditors of the corporation. There was no way in which payment could be forced in case of default. *United States* v. *South Georgia Railway Co.*, 107 Fed. (2d) 3. All the characteristics of the preferred stock here in question show it to be a capital interest rather than an indebtedness. Consequently, credit under section 26 (c) (2) can not be allowed. *May Hosiery Mills, Inc.* v. *Commissioner*, 123 Fed. (2d) 858; *Commissioner* v. *Meridian & Thirteenth Realty Co.*, 132 Fed. (2d) 182.

It may be added that there was no requirement that the stock should be purchased out of current earnings, an additional reason for the disapproval of petitioner's position.

By parity of reasoning, we may dispose of petitioner's contention that it was entitled to credit for taxes refunded to bondholders.

What we have said above as to the character of the stock disposes also of the petitioner's contention that the dividends paid on its preferred stock in 1936 and 1937 should be deducted as interest.

The next issue is whether the petitioner is entitled to a dividends paid credit for certain of the 6 percent preferred stock issued in 1936. It is the petitioner's contention that four-tenths of a share of the 6 percent preferred stock issued in exchange for each share of the 7 percent preferred stock constitutes a stock dividend taxable to the stockholder and that it is, therefore, entitled to deduct the value thereof as a dividends paid credit under section 27 (e) of the Revenue Act of 1936. The respondent contends that the 7 percent preferred stock was exchanged for the 6 percent preferred stock in pursuance of a plan of reorganization under section 112 (b) (3); that the new stock received was not taxable in the hands of the shareholders;

and that, because of the restrictive provisions of section 27 (h), petitioner is not entitled to a dividends paid credit. The sections involved are noted in the margin.[2]

Briefly, the facts show that in 1936 petitioner was in arrears both as to the payment of dividends on the preferred stock and as to the sinking fund requirements on that stock. Consequently, a plan was devised whereby the sinking fund provisions would be made less stringent and the arrears on dividends eliminated. Under this plan, designated "Plan and Agreement for Recapitalization, Exchange of 7 percent Preferred for 6 percent Preferred Stock and Payment of Dividends in Arrears on 7 percent Stock," the holders of the 7 percent stock received in exchange for each share of such stock 1.15 shares of 6 percent stock, plus an extra dividend on each share of their 7 percent stock of one-tenth of a share of the 6 percent stock "and in connection with such exchange" received in payment of all arrears of dividends "a stock dividend of three-tenths (3/10ths) of a share of the new 6 percent stock of the company at par."

The holders of the 7 percent preferred stock were requested to waive the payment in cash of dividends on the 7 percent preferred stock and to accept in payment of said arrears of each share of 7 percent preferred stock a stock dividend of three-tenths of a share of the new 6 percent stock.

It is clear that this arrangement involved a recapitalization and was thus within the statutory definition of a reorganization as provided by section 112 (g) (1) (D). The petitioner does not deny the existence of a recapitalization, but contends that it extended only to the exchange of one share of 7 percent stock for 1.15 shares of 6 percent stock. It contends that the preferred stockholders received the 1.15 shares of the 6 percent in exchange for each share of 7 percent stock; that they received three-tenths of a share specifically by declaration of dividend to pay them the dividends that stood in arrears on the 7 per-

---

[2] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

    \*       \*       \*       \*       \*       \*       \*

    (e) TAXABLE STOCK DIVIDENDS.—In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment.

    \*       \*       \*       \*       \*       \*       \*

    (h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*       \*       \*       \*       \*       \*       \*

    (b) EXCHANGES SOLELY IN KIND.—

    \*       \*       \*       \*       \*       \*       \*

    (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

cent stock; and that they received one-tenth of a share as an extra dividend specifically so declared to compensate them for the difference in the call price on the 7 percent stock and on the 6 percent stock.

This contention is similar to that made in *Skenandoa Rayon Corporation*, 42 B. T. A. 1287; affd., 112 Fed. (2d) 268; and *Knapp Monarch Co.*, 1 T. C. 59; affd., 139 Fed. (2d) 863. In the *Skenandoa* case the dividends on the petitioner's preferred stock were in arrears in the amount of $45.50 a share. In order to discharge this liability a plan of recapitalization was adopted whereby the preferred stockholders received 1.4 shares of new 5 percent preferred stock and $5.50 in cash for each share of the old preferred stock and a release of all claims on unpaid dividends. Petitioner contended that the reorganization extended only to the exchange of one share of the old stock for one share of the new stock and that the payment of four-tenths of a share of the new stock and the $5.50 was, in effect, the payment of a dividend of $45.50. It was held, however, that the consideration for the stock and cash was not divisible, but was both the surrender of the old stock and the right to accumulated dividends, and that credit should be allowed the corporation only to the extent of the cash paid.

In *Knapp Monarch Co.*, *supra*, the petitioner had outstanding 9,630 shares of $3.25 cumulative preferred stock on which dividends were in arrears of $7.65 a share. A plan of reorganization was adopted which provided, among other things, that the $3.25 stock be exchanged share for share for new $2.50 cumulative preferred stock and that a dividend of one-half share of common stock be declared and paid to the recipient of each share of the new preferred stock in consideration of their exchange of the old stock for the new. The petitioner contended that the one-half share of common stock was outside of the reorganization and not a part of the exchange but was the payment of a taxable dividend separate and apart from the exchange. In answer we said:

To say that the holders of the old preferred stock surrendered their old preferred shares in exchange only for the shares of new preferred would require the rewriting of the plan of reorganization * * * Since the common stock was in fact issued pursuant to the plan of reorganization and was a part of the consideration for the exchange of the old preferred stock, and, being the shares of the corporation reorganized, the exchange falls squarely within the provision of section 112 (b) (3), *supra*.

The petitioner attempts to distinguish the above cases by showing that the financial condition of the corporation involved in each case was such that in no event could it have declared a taxable stock dividend. This point was not discussed in the *Skenandoa* case. In the *Knapp Monarch* case it was pointed out that no contention had been made that the company did not have enough earnings and profits to declare a dividend or that there was a nontaxable stock dividend.

The petitioner's contention must be rejected. The language used in

the plan of recapitalization clearly shows that the consideration for the exchange of each share of 7 percent stock was the receipt of 1.55 shares of 6 percent stock and that it can not be separated into two or more independent steps. The plan specifically provided that the holders of the 7 percent stock should receive in exchange for each share thereof 1.15 shares of the 6 percent stock, "*plus* an extra dividend * * * of 1/10th of a share of * * * 6 per cent preferred stock, *and in connection with such exchange* to receive in payment of all arrears of dividends * * * a stock dividend" of three-tenths of a share of new 6 percent stock. (Italics added.) It, therefore, falls within the provisions of section 112 (b) (3) of the Revenue Act of 1936. Consequently, the stock received is not taxable to the stockholders as a stock dividend and the petitioner is not entitled to the dividends paid credit, as provided in section 27 (h).

The cases cited by the petitioner in support of its argument are distinguishable, since none of them involved a statutory plan of reorganization.

Petitioner next contends that the redemption and cancellation of the 7 percent stock constituted in part a distribution of stock taxable as a dividend under section 115 (g) of the Revenue Act of 1936. That section provides in part that the amount distributed in redemption or cancellation of stock to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. However, this is limited by the provisions of section 115 (h) of the Revenue Act of 1936, providing that a distribution by a corporation of its stock or securities shall not be a distribution of the earnings or profits if no gain to the distributee of the stock or securities is recognized by law. We have already held that because of the provisions of section 112 (b) (3) no gain or loss is recognizable to the recipients of the 6 percent stock. Hence, section 115 (g) is inapplicable. *South Atlantic Steamship Line*, 42 B. T. A. 705; *Louis A. Wellhouse, Jr.*, 3 T. C. 363.

Petitioner also relies on section 115 (f) (2) of the Revenue Act of 1936. That section sets forth conditions under which a stock dividend may be taxable to the shareholders. We have already held that no stock dividend was declared in the case at bar, but that there was only an exchange of preferred stock for preferred stock, pursuant to the plan of reorganization. Hence, this section is inapplicable.

Petitioner contends that in any event respondent is now estopped from claiming that the corporation is not entitled to a dividends paid credit since he has already ruled that the dividends are taxable to the stockholders and has collected taxes from them. In answer, we may say that there is no evidence that the respondent ever made any ruling relative to the taxability of the dividends prior to the determination

herein, nor do we have any information as to the taxes paid by the stockholders. However, even if the petitioner were correct in its assertions, the elements of estoppel are not present, since there is no showing that the petitioner suffered any detriment as the result of any prior action on the part of the respondent, an essential element of estoppel. *Crossett Lumber Co.* v. *United States*, 87 Fed. (2d) 930. It is fully established that the Commissioner of Internal Revenue may reexamine and redetermine a taxpayer's liability within the period of limitation. *Knapp Monarch Co.* v. *Commissioner*, 139 Fed. (2d) 863, and cases there cited. We reject petitioner's contention.

In its brief petitioner attempts to raise an issue as to whether the petitioner is entitled to deduct the amounts paid in 1936 and 1937 as reimbursements for local taxes to bondholders residing in Connecticut, Pennsylvania, and Massachusetts. No such issue is pleaded and we decline to entertain it.

*Decision will be entered under Rule 50.*