CARYN WILSON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Wilson v. Commissioner
Docket Nos. 10962-84, 10963-84, 10964-84, 10965-84, 10966-84.
United States Tax Court
T.C. Memo 1986-140; 1986 Tax Ct. Memo LEXIS 463; 51 T.C.M. (CCH) 811; T.C.M. (RIA) 86140; April 14, 1986. *463 Ps were five of seven shareholders of I.H.S., a subchapter S corporation operating two wholesale beverage distributing outlets in Michigan. During the years in issue, the State of Michigan required beverage distributors to redeem beverage containers returned to them by local dealers. I.H.S. did not report as income deposits it received in one year but anticipated would be paid out to local dealers in a later year. I.H.S. placed these deposits in a "container deposits payable" account. Held, the deposits I.H.S. placed in its container deposits payable account were properly includable in I.H.S.'s gross income for the years in issue. Held further, I.H.S. was not entitled to accrue as a current expense the ending balances in its 1978 and 1979 container deposits payable account. Stuart A. Rosenblatt, for the petitioners. William S. Garofalo, for the respondent. NIMS
MEMORANDUM OPINION *464 NIMS, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Docket No.
Petitioner
Year
Deficiency
10962-84
Caryn Wilson
1978
$4,335.00
1979
1,350.00
10963-84
Jay Scott Levene
1978
8,252.00
1979
1,556.00
10964-84
Willis M. Howard and
1978
5,312.00
Rae Lee Howard
1979
1,004.00
10965-84
Glenn F. Putman and
1978
5,111.00
Lori L. Putman
1979
1,637.00
10966-84
Gerald E. Schmidtke
1978
1,188.00
and Jean C. Schmidtke
1979
244.76
After concessions, *465 the issues for decision are (1) whether petitioners, shareholders of I.H.S. Distributing Company (I.H.S.), a subchapter S corporation engaged in the wholesale beverage distributing business, should have reported as income "deposits" I.H.S. received on the sale of returnable beverage containers; and (2) if so, whether petitioners are entitled to deduct as an accrued expense the container deposits which I.H.S. anticipated would be paid out in later years. The case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. All petitioners resided in Michigan at the time their respective petitions were filed. For convenience, Caryn Wilson, Jay Scott Levene, Willis M. Howard, Glenn F. Putman and Gerald E. Schmidtke will sometimes hereinafter be referred to as petitioners. During the years in issue, petitioners were five of seven shareholders of I.H.S., a subchapter S corporation which operated two wholesale beverage distributing outlets in Kalamazoo, Michigan, and Holland, Michigan. I.H.S. was an accrual basis taxpayer. In October, 1978, *466 the State of Michigan enacted a deposit law requiring local dealers of alcoholic and non-alcoholic beverages to collect a deposit of at least five cents for each beverage sold for consumption off the business premises. Michigan Statutes Annotated sec. 18.1206(12) (Callaghan). Each dealer is also required to refund deposits to any person who returns a beverage container to him, regardless of whether the container was purchased from him, if the dealer collects deposits and carries containers of similar size and brand. Michigan Stat. Ann. sec. 18.1206(12). Each wholesale beverage distributor is required to refund deposits to any dealer who returns a beverage container to him if the wholesale distributor sells containers of similar size and brand. Michigan Stat. Ann. sec. 18.1206(12). Although the statute does not specifically require distributors to collect a deposit when a beverage container is sold to a dealer, I.H.S. did collect such deposits during the years in issue. At the time of sale, title to the beverage containers passed from I.H.S. to the dealers. During December, 1978, and throughout 1979, I.H.S. maintained a monthly record of the amount of container deposits it (1) *467 received from dealers, (2) paid out to dealers, (3) anticipated would not be paid out to dealers and (4) anticipated would be paid out to dealers in a later month. I.H.S. placed the deposits it anticipated would be paid out to dealers in a later month in a reserve account styled "container deposits payable." On its 1978 and 1979 income tax returns, I.H.S. reported as income the deposits it received during those years which it anticipated would not be paid out to dealers in a later year. [2] I.H.S. did not report as income the amount of container deposits it anticipated would be paid out in a later year. Rather, on Schedules L (Balance Sheets) attached to its 1978 and 1979 corporate income tax returns, I.H.S. reported the ending balances in its container deposits payable account as a current liability. On its 1978 return, I.H.S. reported a beginning balance of zero and an ending balance of $134,343 in its container deposits payable account.On its 1979 return, I.H.S. reported a beginning balance of $134,343 and an ending balance of $157,809 in its container deposits payable account. During 1978 and 1979, I.H.S. actually paid out 57.7 percent and 96.8 percent, respectively, of the *468 deposits it received during those years. In the notices of deficiency, respondent determined that I.H.S. should have reported as income the ending balances in its 1978 and 1979 container deposits payable account. Respondent therefore increased petitioners' 1978 and 1979 small business income by their proportionate share of container deposits excluded from income by I.H.S. Petitioners contend that I.H.S. properly excluded from income the amount of deposits placed in the container deposits payable account. Petitioners alternatively contend that if the deposits are properly includable in gross income, I.H.S. is entitled to accrue as a current deduction the ending balances in its 1978 and 1979 container deposits payable accounts. We will first consider whether the container deposits were properly includable in I.H.S.'s gross income during the years in issue. *469 Section 61(a)[3] provides that gross income includes income from whatever source derived, including gain from the sale or exchange of property. Petitioners, relying on Farmers Creamery Co. of Fredericksburg, Va. v. Commissioner,14 T.C. 879 (1950), contend that because I.H.S. reasonably anticipated that the container deposits in issue would be paid out in the future, such deposits do not constitute income within the meaning of section 61(a). Respondent disagrees. maintaining that because title to the beverage containers passed from I.H.S. to the dealers at the time the deposits were paid, such deposits represent gain from the sale of property and, therefore, are income. Respondent relies on Okonite Co. v. Commissioner,4 T.C. 618 (1945), affd. 155 F.2d 248 (3rd Cir. 1946), to support his position.
In Okonite, the taxpayer was a corporation engaged in the manufacture and sale of insulated wire and cable. The taxpayer shipped most of its wire and cable on large reels which customers purchased *470 for an amount in excess of the actual cost of the reels. If the customer returned the reels in good condition, the taxpayer would generally repurchase the reels for the original purchase price. At the time of shipment, the taxpayer would credit the amounts which it received on the sale of the reels in excess of their cost to an account designated "Reel Contingent Profit Reserve." When the reels were returned, the taxpayer would debit this account for the amount paid out in excess of the reel's cost. Because experience showed that 90 percent of all reels sold were eventually returned, the taxpayer only included in income eacy year 10 percent of the net increase to its Reel Contingent Profit Reserve Account. This Court, however, rejected the taxpayer's method of accounting and upheld respondent's determination that the entire net increase to the Reel Contingent Profit Reserve Account should have been included in income. In so holding, we stated that: There can be no doubt that the reels in the instant case were sold. There is nothing to show that the petitioner in any way retained title to them. The customer was charged the standard price for the reel and was free thereafter to *471 keep it, to sell it elsewhere, or to return it to the petitioner. The petitioner agreed to repurchase at the original price those reels which were returned in good condition within 12 months from the date of shipment. Those that were returned in need of repair would be accepted only at the petitioner's option. It is admitted that there was no way in which the customer could be forced to return the reels. A significant fact is that petitioner denominates itself in its price list of reels as the "seller." It is clear to us that there was in each case a sale of the reel to the customer and a resale to the petitioner. [4 T.C. at 628.] In the instant case, the parties have stipulated that title to the beverage containers passed to the beverage dealers at the time the deposits were paid to IHS. Moreover, as in Okonite, the dealers were free to keep the containers, sell them to another distributor or return them to I.H.S. I.H.S. could not force any dealer to return a container. Consequently, we are satisfied that the deposits in issue represent gain from the sale of beverage containers and therefore constitute income within the meaning of section 61(a). [4] In *472 so holding, we point out that I.H.S. included in income those deposits which it anticipated would not be paid out in a later year. I.H.S. therefore recognized that some portion of the deposits it received during the years in issue constituted income within the meaning of section 61(a). The facts of this case are clearly distinguishable from the facts presented in Farmers Creamery Co. of Fredericksburg, Va. v. Commissioner,supra. In that case, the taxpayer, a corporation engaged in the manufacture and sale of various dairy products, was required by the Office of Price Administration to collect a three cent deposit for each bottle of milk it delivered to wholesale customers. The taxpayer did not report those deposits as income, but rather maintained a record of the deposits it collected in a liability account. This Court sustained the taxpayer's method of accounting, finding that the taxpayer did not sell the bottles to its customers, but rather retained title to them. In the instant case, however, the parties have stipulated that title to the beverage *473 containers passed to the beverage dealers at the time deposits were paid. Consequently, Farmers Creamery Co. of Fredericksburg, Va. is inapposite to the facts presented herein. Having decided that the deposits in issue represent gain from the sale of beverage containers, we must next decide when this gain is properly includable in I.H.S.'s gross income. Section 451(a) provides that "[t]he amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period." Section 1.451-1(a), Income Tax Regs., provides that an accrual method taxpayer includes income in gross income "when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Petitioners, relying on section 1.451-4, Income Tax Regs. (accounting for redemption of trading stamps and coupons), contend *474 that because I.H.S. reasonably estimated the amount of deposits which it anticipated would be paid out in a later year, such deposits were not properly includable in income in the year of receipt. Respondent maintains that because I.H.S.'s right to receive the income is fixed in the year of receipt and the amount of the income can be determined with reasonable accuracy, the deposits are properly includable in income in the year of receipt. We agree with respondent. In Automobile Club of New York v. Commissioner,32 T.C. 906, 915 (1959), affd. 304 F.2d 781 (2d Cir. 1962), this Court addressed the question of whether an accrual method taxpayer must report as income in the year of receipt proceeds it received from the sale of redeemable "savings plan coupons." In that case, the taxpayer sold savings plan coupons to service stations and automobile accessory stores at face value. The purchasers of these coupons then distributed the stamps to taxpayer's members in an amount equal to 10 percent of each member's purchases. The taxpayer would redeem these coupons when presented by a member. The club did not include in income the receipts it received on *475 the sale of the coupons nor did it deduct the amounts paid in redemptions. We, however, rejected the taxpayer's method of accounting and held that "unrestricted income, subject only to a contingent liability to refund in future years, must be reported in the year of receipt, with the consequence that deductions for refunds may be taken in the year in which such refunds are in fact made." 32 T.C. at 915. The Court explained that under any other rule of law, "the Commissioner might be compelled to wait an unreasonable time, perhaps indefinitely, for the collection of tax on amounts which in fact would never be refunded." 32 T.C. at 915. In Moritz v. Commissioner,21 T.C. 622 (1954), this Court considered the proper method of accounting for refundable deposits paid to the taxpayer, a photographer, for photographs. In Moritz, the taxpayer owned 30 or more photographic portrait studios in 13 states. The studios would collect deposits from customers at the time they were photographed and at the time they selected one or more proofs for finishing. *476 All deposits, however, were received with the understanding that the customers could reject the finished works and receive a full refund of their deposits. The taxpayer therefore excluded from income all deposits on unfinished photographs which he held at the end of his taxable year. We, however, found that the deposits were income to the taxpayer in the year they were received, stating: [T]he deposits were income to the petitioner when he received them. This is true even though he might be required to refund part or all he had received. There was no restriction as to the disposition which he could make of deposits once received; and he, in fact, mingled them with other funds in a common bank account and spent them as he chose. * * * [21 T.C. at 624.] In the instant case, I.H.S. had an unrestricted right to the deposits which it collected from dealers subject only to a contingent obligation to return the deposits if and when the beverage containers were returned by dealers. The record contains no evidence that these deposits were segregated from I.H.S.'s other funds *477 or that I.H.S. did not spend the deposits as it chose. Consequently, these deposits constituted unrestricted income to I.H.S. in the year of receipt and, therefore, were properly includable in income in the year they were received. We are unpersuaded by petitioners' reliance on section 1.451-4, Income Tax Regs. (accounting for redemption of trading stamps and coupons) to support their position that I.H.S. properly placed in a reserve account deposits it anticipated would be paid out in later years. This regulation specifically exempts accrual method taxpayers who issue or sell trading stamps or premium coupons from the general rule that unrestricted income is includable in income in the year of receipt, allowing such taxpayers to subtract from gross receipts an amount for future redemptions of stamps or premium coupons. Exceptions to taxation, however, must be strictly construed against the taxpayer. Danenberg v. Commissioner,73 T.C. 370, 385 (1979). Consequently, because section 1.451-4, Income Tax Regs., by its terms, *478 only applies to accrual method taxpayers who issue or sell trading stamps and coupons, this exemption cannot be extended to accrual method taxpayers who sell returnable beverage containers. Moreover, even assuming that we could properly extend by analogy the provisions of section 1.451-4, Income Tax Regs., to the facts of the instant case, I.H.S. falls short of satisfying the requirements of the regulation. Pursuant to the regulation, the taxpayer is required to use a method which results in a reasonably accurate estimate of future redemptions. Section 1.451-4(c)(2), Income Tax Regs., provides that: Normally, the estimated future redemptions of a taxpayer shall be determined on the basis of such taxpayer's prior redemption experience. However, if the taxpayer does not have sufficient redemption experience to make a reasonable determination of his "estimated future redemptions," or if because of a change in his mode of operation or other relevant factors the determination cannot reasonably be made completely on the basis of the taxpayer's *479 own experience, the experiences of similarly situated taxpayers may be used to establish an experience factor. The regulation contemplates that estimated future redemptions will be determined on the basis of the taxpayer's prior redemption history or the redemption history of similarly situated taxpayers. In the instant case, however, I.H.S.'s redemption experience is insufficient to make a reasonable estimate of its future redemptions. First, we note that I.H.S.'s obligation under the Michigan deposit law did not begin until November, 1978. I.H.S. therefore had no refund experience to use in estimating the amount of deposits received in 1978 which would be refunded in a later year. Moreover, from December, 1978, through December, 1979, the percentage of deposits I.H.S. paid out each month varied from 57.7 percent to 103.5 percent. We do not think that this erratic pattern of refunds over a short period of time constitutes sufficient refund experience on which to make a reasonable estimate of future redemptions. We also note that petitioners have presented no evidence of the refund experience of similarly situated taxpayers. Consequently, even if the provisions of section 1.451-4, Income Tax Regs. *480 , were applicable by analogy to the case before us, we would conclude that I.H.S. has failed to provide a reasonably accurate estimate of the amount of deposits which it will refund in the future. Petitioners alternatively argue that if the container deposits are properly includable in gross income, I.H.S. is entitled to accrue as a current deduction the amounts remaining in its deposits payable account at the end of 1978 and 1979. Respondent disagrees, arguing that because I.H.S.'s obligation to refund the deposits placed in its deposits payable account was contingent upon the tender of beverage containers by local dealers, all of the events establishing I.H.S.'s obligation to refund the deposits have not occurred prior to the end of the years in issue. Respondent therefore concludes that I.H.S. is not entitled to accrue these amounts as current deductions because the "all events" test provided in section 1.446-1(c)(ii), Income Tax Regs., has not been satisfied. We agree with respondent. The test for whether an accrual basis taxpayer may claim a liability as *481 a deduction is known as the "all events" test and is set forth in section 1.446-1(c)(ii), Income Tax Regs., as follows: Under [the accrual] method, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of the liability giving rise to such deduction and the amount thereof can be determined with reasonable accuracy. * * * In the instant case, however, all of the events establishing the fact of I.H.S.'s obligation under the Michigan deposit law to refund deposits have not occurred prior to the year in which the containers are returned to I.H.S. At the time the beverage containers were sold, the purchasing dealers became the absolute owners of the beverage containers and, therefore, were free to retain permanent ownership of the containers, to return the containers to I.H.S. for a refund or to return the containers to another local distributor for a refund. Only when the dealers returned the containers to I.H.S. did I.H.S.'s contingent obligation under the Michigan deposit law become certain. Thus, because all of the events necessary to establish I.H.S.'s obligation to refund the deposits placed in *482 the container deposits payable account during each of the years in issue had not occurred prior to the end of each of those years, I.H.S. is not entitled to accrue the deposits as a current expense. We think that this result is consistent with the result reached by the Supreme Court in Brown v. Helvering,291 U.S. 193 (1934). In Brown, the taxpayer, a general insurance agent who used the accrual method of accounting, credited to a reserve account a percentage of his paid-in premiums to provide for refunds on policies cancelled in later years. In holding that the taxpayer could not accrue the credits to the "Return Commission" reserve account as a current expense prior to the year a particular policy was cancelled, the Court explained: [N]o liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year. Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent. [Citations *483 omitted. 291 U.S. at 200.] Petitioners attempt to distinguish Brown on the grounds that the taxpayer in that case voluntarily set up a reserve to account for future policy cancellations while, here, I.H.S. was required to set up a reserve in response to a state-mandated obligation. We, however, find this to be a distinction without substance. As stated above, an accrual method taxpayer is entitled to deduct an expense in the taxable year in which all events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. This is true regardless of whether the liability is based on a contract voluntarily entered into by the taxpayer or the liability is imposed by state statute. As found above, I.H.S.'s statemandated obligation to refund deposits remained contingent until the beverage containers were returned. Consequently, for the purposes of satisfying the all events test, I.H.S.'s obligation to refund deposits was no less contingent than the taxpayer's obligation to refund insurance premiums in Brown.
Petitioners also argue that the facts of the instant case are distinguishable from the facts *484 in Brown in that the amount of premiums the taxpayer in Brown was required to refund when a policy was cancelled declined over time while, here, the amount I.H.S. was required to refund when a container was returned remained uniform. We, however, are not persuaded by this distinction. Although the taxpayer's obligation in Brown declined over time and I.H.S.'s obligation in the instant case remained uniform, both obligations were contingent on the happening of a future event. As stated above, I.H.S. was not required to refund any amount prior to the time a beverage container was returned. Consequently, under the all events test, I.H.S. is not entitled to accrue a deduction prior to the year in which the beverage containers are returned. [5] Accordingly, respondent's determination is sustained.
*485 To reflect the foregoing, Decisions will be entered for respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Jay Scott Levene, docket No. 10963-84; Willis M. Howard and Rae Lee Howard, docket No. 10964-84; Glenn F. Putman and Lori L. Putman, docket No. 10965-84; and Gerald E. Schmidtke and Jean C. Schmidtke, docket No. 10966-84.↩
2. I.H.S. apparently offset the amount of deposits it received during each of the years in issue by the amount of deposits it actually paid out during each of those years. Respondent does not dispute I.H.S.'s treatment of those amounts.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the years in question.↩
4. We note that the record contains no evidence of I.H.S.'s cost basis in the beverage containers.↩
5. We note that in Fred Nesbit Distributing Co. v. United States,604 F.Supp. 552 (S.D. Iowa 1985), the United States District Court for the Southern District of Iowa, citing to Okonite v. Commissioner,4 T.C. 618 (1945), affd. 155 F.2d 248 (3rd Cir. 1946), and Brown v. Helvering,291 U.S. 193↩ (1934), held that the taxpayer's obligation under the Iowa "bottle law" to refund deposits collected on beverage containers did not accrue until a container was tendered for refund by a dealer.