PLYMOUTH BREWING & MALTING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20310. Promulgated April 23, 1929.

*Maurice Weinstein, Esq.*, for the petitioner.
*J. F. Greaney, Esq.*, for the respondent.

124

OPINION.

Trussell: That first issue is a question of fact relating to the ordinary and necessary expenses of the petitioner which are allowable as deductions. In the return filed by the petitioner expenses aggregating $82,789.13 were reported; included therein was an item of

" collector's expense and cash rebates $12,181.05." The respondent has disallowed an amount of $12,992.06 expenses. It appears that the amount disallowed by the respondent was expended for such ordinary and necessary business purposes as rebates to customers, expenses of collecting accounts receivable, and expenses of traveling and entertaining by the president, who was also the general manager, chief salesman, and collector. We are of opinion that they are allowable and the disallowance of $12,992.06 should be reversed.

The second issue offers for decision a choice of methods in computing the net income of the petitioner. Containers in the form of bottles, cases, and kegs, were employed to distribute the product of the petitioner to its customers. The petitioner charged the containers to the customers at a fixed price when the product was delivered. These charges are included in the amount of the gross sales. If and when the containers were returned, the customers were given credit or were paid cash for them. At the end of the year an inventory value of the containers on hand with the petitioner was reflected on the books by a journal entry. In determining the deficiency the respondent has revised this procedure in that he has· capitalized the containers and allowed as a deduction an amount computed as representing exhaustion, wear and tear of the capital value, popularly referred to as " depreciation." Thus the containers are considered by the respondent to be at all times the property of the petitioner. There are many angles to the question. Usually at the end of any year, containers are outstanding in the hands of the customers and income for the year includes charges for the outstanding containers; in the end, the charges will be nullified by credits for such of the containers as are returned. Although there is intended ultimately no gain in the transactions, the tide of " income " ebbs and flows over the dividing lines between the statutory taxable years. We have decided that a reserve is unallowable by way of excluding from income the charges for containers expected to be returned. *Beadleston & Woerz, Inc.*, 5 B. T. A. 165. In the instant case the petitioner is extraordinarily handicapped in that it was practically put out of business during the taxable year. On the whole and solely with reference to the instant case, we think that the adjustment of the respondent has not simplified the situation, and of the two methods that of the petitioner reflects income with greater clarity. We, therefore, sustain the petitioner. It is entitled to an additional deduction amounting to $2,359.06.

The remaining issue relates to a deduction from income in the return by way of allowance for a loss which the petitioner claims to have suffered during the taxable year. Respondent has disallowed the deduction.

.Until August of the taxable year the petitioner was engaged in the manufacture and sale of "near beer" by a process which first manufactured a product containing an unlawful proportion of alcohol and then by dealcholizing the beer converted it into vendible "near beer." In August the petitioner received notice from an authoritative source to cease operations of the dealcoholizing plant until a permit to operate was obtained from the State of Wisconsin authorities. Accordingly, the operation of the entire plant was abruptly suspended and has never been resumed. In our view, no significance is to be attached to the fact that the refrigerating machinery was kept going for the preservation of the quantity of the product on hand, which had not been dealcoholized and, in addition, the engine, brew kettle and a few vats were used for experimentation in the following year in the futile endeavor to develop a process of manufacture which would arrest fermentation and thus avoid the necessity of dealcoholizing. No further productive use was found for the plant. The petitioner was not successful in obtaining a permit of any kind and the operation of the plant has never been resumed.

The loss claimed is that of obsoleteness as distinguished from progressive obsolesence culminating at some future date. We think the facts afford a substantial basis for the claim of the petitioner. We are not deterred in this opinion by the efforts of the petitioner to obtain a permit. In affirming our decision in *Frederick C. Renziehausen*, 8 B. T. A. 87, the Circuit Court of Appeals, Third Circuit, 31 Fed. (2d) 675, had this to say in reply to a contention that the assets there at issue might have been revived in usefulness at any moment upon securing a new permit to operate:

This contention is purely hypothetical, is based upon possibilities and presumptions and assumptions up to this time contrary to the fact and may never in the life of the taxpayer become a fact.

We think the abortive experiments of the petitioner in the following year are demonstrative of the uselessness of the assets rather than of their usefulness. In our view the petitioner was, at the end of the taxable year, face to face with a loss for the present recognition of which there certainly were as good grounds as in *Wheeling Tile Co.* v. *Commissioner of Internal Revenue*, 25 Fed. (2d) 455; or in *Frederick C. Renziehausen, supra.*

In *Wheeling Tile Co.* v. *Commissioner of Internal Revenue, supra,* the court was of opinion that:

The fact that further experiments were afterward made with a view to making the oil system effective, although to no purpose, does not prove that the expenditure was not a complete loss in the year it was made, and the new system shown by test not to be a success.

The court then cites *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398, as follows:

\* \* \* A loss may become complete enough for deduction without the taxpayers establishing that there is no possibility of eventual recoupment \* \* \*. The taxing act does not require that the taxpayer be an incorrigible optimist.

Taking up in detail the assets upon which obsoleteness is claimed we find included therein tools, livestock and implements, automobiles, and saloon fixtures. There is no evidence relative to any of these and we can not find that a loss is attributable to them.

With respect to the land included in the plant property, we think a loss is unallowable. Title was retained; the evidence shows that the land had a substantial remaining value; the absence of a ready market is not determinative. We, therefore, sustain the respondent in this respect.

On the other hand, we are satisfied that the brewery buildings, boilers and boiler machinery, sundry machinery, tanks and vats, and the sidetrack, were rendered useless and, to the extent indicated in the findings, valueless, during the taxable year, so that the petitioner is entitled to a deduction of $23,181. Cf. *Monroe Cotton Mills*, 6 B. T. A. 172; *Frederick C. Renziehausen, supra; Konrad Schreier Co.*, 9 B. T. A. 407; *J. Chr. G. Hupfel Co.*, 9 B. T. A. 944; *City Park Brewing Co.*, 10 B. T. A. 925; *Multibestos Co.*, 6 B. T. A. 1060.

*Judgment will be entered pursuant to Rule 50.*