Ralph Ferguson, Transferee, et al. [1] v. Commissioner. Ferguson v. Commissioner
Docket Nos. 20340, 20341, 20342, 20343.
United States Tax Court
1952 Tax Ct. Memo LEXIS 300; 11 T.C.M. (CCH) 213; T.C.M. (RIA) 52066; March 7, 1952
*300 Held: 1. Respondent did not err in determining that the net income of the Independent Beverage Corporation, transferor, should be increased by increasing sales in the amount of $2,086.39 and disallowing purchases in the amount of $905.75. 2. The amounts which the Independent Beverage Corporation, transferor, is entitled to deduct as ordinary and necessary business expenses, representing "quantity discounts", bar spending and miscellaneous items paid and incurred in the taxable year 1943, determined. 3. The amounts which the Independent Beverage Corporation, transferor, is entitled to deduct as ordinary and necessary business expense, representing legal and professional fees paid and incurred in the taxable year 1943, determined. Lucian L. *301 Dunbar, Esq., 925 Circle Tower, Indianapolis, Ind., for the petitioners. Hugh F. Culverhouse, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion These consolidated proceedings involve the liability of each of the petitioners as transferees of the Independent Beverage Corporation for deficiencies in income and excess profits tax liabilities and penalties determined against that corporation for the taxable period January 1, 1943 to May 31, 1943, in the following amounts: Deficiency
Penalty
Income tax
$ 434.24
$ 183.33
Excess profits tax
7,907.31
1,976.83
The contested issues are: 1. Did the respondent err in determining that the net income of the Independent Beverage Corporation, transferor, should be increased by increasing sales in the amount of $2,086.39 and disallowing purchases in the amount of $905.75? 2. Did the respondent err in disallowing a deduction of $3,675.51 claimed by the Independent Beverage Corporation, transferor, as advertising, travel and miscellaneous expenses for the taxable period involved? 3. Did the respondent err in disallowing a deduction of $3,500 claimed by the Independent Beverage *302 Corporation, transferor, as legal and professional expenses? In their respective petitions each petitioner assigned additional errors, as follows: (a) That respondent erred in asserting a 25 per cent penalty under section 291 (a) of the Internal Revenue Code because of the failure of the Independent Beverage Corporation, transferor, to file timely income and excess profits tax returns for the taxable period involved. (b) That respondent erred in computing the excess profits net income of the Independent Beverage Corporation, transferor, on the basis of a short taxable year beginning January 1, 1943, and ending May 31, 1943. (c) That respondent erred in increasing the income of the Independent Beverage Corporation by disallowing a deduction for capital stock tax in the amount of $225. On brief the respondent concedes error with respect to the assignments of error set forth in (a) and (b) above. With respect to the assignment of error set forth in (c) above, the petitioners offered no proof and make no argument on brief as to such assignment and we, therefore, consider such assignment of error as having been abandoned by petitioners. The petitioners *303 have stipulated that each is liable, as transferee, for any tax deficiency determined against the Independent Beverage Corporation, transferor. Findings of Fact Some of the facts were stipulated and are so found. Petitioners, Ralph Ferguson, Josephine Ferguson, Howard Brown and Iva Brown, were equal shareholders and transferees of the Independent Beverage Corporation (hereinafter referred to as the Corporation), an Indiana corporation, organized in 1939 and having its principal office at Anderson, Indiana. Its authorized capital stock consisted of 1,000 shares of no par value. Its issued capital was 100 shares of which each of the petitioners owned 25 shares, for which each paid $2,500. The officers of the Corporation were Josephine Ferguson, president; Ralph Ferguson, secretary and treasurer; and Frank Johns, vice-president. From its organization until June 1, 1943, the Corporation was engaged in the wholesale distribution of alcoholic malt beverages in Madison County, Indiana. The Corporation kept its books and filed its tax returns on an accrual method of accounting. Its tax returns for the taxable period involved were filed with the collector of internal revenue for the district *304 of Indiana, at Indianapolis. On May 27, 1943, the stockholders of the Corporation authorized its board of directors to proceed with the dissolution of the Corporation in conformity with the laws of Indiana. On May 31, 1943, the board of directors adopted a resolution providing in substance that the assets of the Corporation be distributed among the stockholders as of May 31, 1943. On August 2, 1943, the Corporation executed an assignment reading as follows: "ASSIGNMENT "WHEREAS, the Independent Beverage Corporation has heretofore assigned and distributed equally all of its assets to Ralph R. Ferguson, Mary Josephine Ferguson, Howard H. Brown, and Iva I. Brown: and "WHEREAS, the Corporation in order to protect its stockholders makes this general assignment: "NOW, THEREFORE, the Independent Beverage Corporation of Anderson, Indiana does hereby assign equally to Ralph R. Ferguson, Mary Josephine Ferguson, Howard H. Brown, and Iva I. Brown all right, title and interest in all property, whether real, personal or mixed, including but not in limitation thereof, the post-war refund of Excess Profits Taxes as provided for in Section 780 (a) of the Internal Revenue Code *305 , United States Bonds issued under authority of 780 (b) of the Internal Revenue Code, and all refunds due the Corporation because of the overpayment of Federal or State Income Taxes, Declared Value Excess Profits Taxes, and Excess Profits Taxes. "Executed this 2nd day of August 1943. "INDEPENDENT BEVERAGE CORPORATION By "Josephine Ferguson, Pres." All of the assets and liabilities of the Corporation, as of May 31, 1943, were assigned to the Independent Beverage Company, a co-partnership, composed of the above named individuals. At no time subsequent to May 31, 1943, did the Corporation make any sales of beer. On March 1, 1944, the Corporation filed its Articles of Voluntary Dissolution with the Indiana Secretary of State, who approved them and issued to the Corporation a certificate of dissolution on the same date. The Corporation deposited with brewers, from whom it bought its products, a certain sum for containers, which transactions the Corporation, on its books, did not treat as income or expense deductions. The identical amount of the deposit with each brewery was received from the Corporation's customers when such containers were distributed *306 to such customers. These transactions were likewise treated by the Corporation on its books and records as resulting in neither income nor expense. It was the policy of the Corporation to allow a discount to customers purchasing 300 or more cases of beer per month. The rate of discount started at 300 cases and was graduated up to 500 cases. The maximum rate was a flat 10 cents per case. The "quantity discount" was available alike to all customers purchasing the minimum quantity of 300 cases per month. In the taxable year 1943 only three customers became entitled to discounts. In determining the deficiency for 1943 the respondent adjusted the net income by increasing sales in the amount of $2,086.39 and disallowing purchases in the amount of $905.75. The Corporation, on its 1943 Federal income tax return, claimed among others, the following deductions: Advertising
$2,819.90
Travel Expense
711.00
Miscellaneous
2,033.60
$5,564.50 The respondent disallowed $3,657.51 of the above amount claimed. In the taxable year 1943, as to the above items, the Corporation made expenditures in the amounts and for the purposes as follows: Quantity discounts to customers
$1,198.33
Telephone, bottles, advertising,
supplies
1,037.39
Travel
215.00
Bar spending
511.50
Indiana Beer Wholesalers' Assn.
dues
50.00
Gas and oil
42.28
$3,054.50
*307 The sum of $3,054.50 constitutes ordinary and necessary business expenses incurred and paid by the Corporation in the taxable year 1943. In its income tax return for 1943, the Corporation claimed the amount of $5,342.53 as a deduction for legal and professional expenses. The respondent disallowed the amount of $3,500. Of the amount disallowed, $3,000 was for legal fees of the firm of Dunbar & Dunbar, and $500 was the amount paid to Samuel Johnson, an attorney and State Senator. In the taxable year 1943 the Corporation made expenditures for legal and professional services as follows: Paul Caldwell, accountant
$ 40
Frederick C. Albershardt, accountant
326
Walter Vermillion, legal
975
Sam Johnson, legal
500
Dunbar & Dunbar, legal
1,500
$3,341
The above sum of $3,341 constitutes ordinary and necessary expenses incurred and paid by the Corporation in the taxable year 1943. As of December 31, 1943, the Corporation accrued on its books the sum of $2,750 as attorneys' fees to Dunbar & Dunbar. On the same date a check in the amount of $750 was issued to such firm, the balance of $2,000 remaining as an accrual item. Under date of January 24, 1944, the *308 officers of the Corporation executed Articles of Voluntary Dissolution. Paragraph VIII purports to set forth "A complete itemized list of all the corporate debts and liabilities of the corporation existing at the time of the adoption of such resolution and thereafter incurred, and the date and manner of payment of each such debt and liability." In such schedule the payment $750of to Dunbar & Dunbar on December 31, 1943, is shown, but there is no mention of any additional unpaid liability to such firm. At some undisclosed date after the Corporation ceased doing business, the amount of $2,000 was paid to Dunbar & Dunbar by Ralph Ferguson, Josephine Ferguson, Howard Brown and Iva Brown. Opinion HILL, Judge: The first issue involves the propriety of the respondent's action in increasing the income of the Independent Beverage Corporation, transferor, by increasing sales in the amount of $2,086.39 and disallowing purchases in the amount of $905.75. The correctness of the amounts by which the respondent increased sales and decreased purchases with respect to containers is not in dispute. The respondent contends that the deposits the Corporation received from its customers for containers *309 were in reality sales and the refunds paid to customers were a repurchase or a reduction in sales. But the deposits which the Corporation made with the breweries for containers and the amounts received for containers returned constituted purchases and sales and should be accounted for as adjustment to cost of goods sold. Petitioners disagree with the respondent's theory and contend that since the Corporation received from its customers the identical amount it deposited with the breweries neither income nor expense resulted from the transactions. The evidence discloses that the deposit charge was billed as other merchandise was billed. The vendors did not retain title to the containers but the vendees had complete title and were not required to return them. The obligation on the vendors was to repurchase the containers if and when the containers were returned in good condition. It has been repeatedly held that where charges for deposits are made for returnable containers, income is more clearly reflected where such deposits are included in income as sales in the year the charges are made, and refunds made on returned containers are charged to expenses the year the refunds are made. *310 LaSalle Portland Cement Co., 4 B.T.A. 438; Beadleston & Woerz, Inc., 5 B.T.A. 165; Plymouth Brewing & Malting Co., 16 B.T.A. 123; Okonite Co., 4 T.C. 618, affirmed on other issues 155 Fed. (2d) 248. Petitioners rely on Farmers Creamery Co. of Fredericksburg, Va., 14 T.C. 879. In that case the taxpayer in 1942 was required by O.P.A. to obtain from its wholesale customers for 1943 and subsequent years deposits of three cents per bottle delivered to them, which deposits were to be returned to the customers with the return of the bottles. The taxpayer kept a record of the deposits in a liability account and debited the refunds as made. The bottles were not sold to the customers. It was held that the respondent could not require the taxpayer to report the deposits as income and deduct the refunds. We think the instant case is distinguishable on its facts since it appears that the containers here were sold to the customers, whereas in the Farmers Creamery Co. case the bottles on which the O.P.A. required a deposit were not sold to its customers. We, therefore, conclude that petitioners have not sustained *311 the burden of showing error in respondent's adjustments to the income of the Corporation, transferor, on account of its transactions relating to the deposits on containers. On this issue the respondent is sustained. The second issue involves the disallowance of certain deductions claimed by petitioners as ordinary and necessary expenses of the Corporation in the taxable year. In its 1943 Federal tax returns the Corporation, transferor, claimed a deduction of a total sum of $5,564.50, for advertising expenses in the amount of $2,819.90, travel expenses of $711, and miscellaneous expenses in the sum of $2,033.60. At the hearing petitioners attempted to justify expenditures in the total amount of $4,342.31. In our findings we have allowed as ordinary and necessary expenses the aggregate amount of $3,054.50, classified as follows: Quantity discounts
$1,198.33
Telephone, bottles, advertising,
supplies
1,037.39
Travel
315.00
Bar spending
511.50
Indiana Beer Wholesalers' Assn.
dues
50.00
Gas and oil
42.28
$3,054.50
The difference between the amount of $4,342.31, which petitioners on brief now claim, and the amount of $3,054.50, found by us, results *312 from the disallowance in part of the amounts claimed as "bar spending" and "quantity discounts" to customers. The record discloses that it was the practice of the Corporation to draw checks to cash. In some instances the check stubs in evidence indicate the entire amount was charged to either advertising or travel or miscellaneous expenses. In some instances these stubs indicate an allocation of the amount to two categories and in other instances there is an allocation to all three categories. We are unwilling to accept the testimony of the witness, Josephine Ferguson, who kept the Corporation's books and drew the checks to cash, that certain amounts of cash withdrawals constituted expenditures for "bar spending" and "quantity discounts", where the check stubs do not indicate that the money was used for such purposes. We think it highly improbable that any person could recall the fact that such a cash withdrawal was for a specific purpose after a lapse of seven years, where the only available record is a check stub which carries no notation of that specific purpose. Especially do we believe this to be so where there were such a large number of checks drawn to cash. On a number of *313 the check stubs the purpose of the cash withdrawal is indicated. We therefore reject petitioner's Exhibit No. 5, as having no weight in so far as, we think, it can not be fully supported by the underlying records. We have carefully examined the check stubs and our finding with respect to the amount of the expenditures for "bar spending" and "quantity discounts" is determined on the basis of the notations on the check stubs with respect to checks drawn to cash. No adequate records having been maintained, petitioners have no ground to complain of our refusal to give full credence to testimony which we think is not supported by the underlying records in evidence. The respondent, on brief, challenges the right of petitioners to a deduction for expenditures designated as "quantity discounts" on the ground that such payments were in violation of the laws of Indiana and therefore contrary to public policy. Commissioner v. Heininger, 320 U.S. 467; Polley, et al. v. Westover, 77 Fed. Supp. 973; Thomas B. Lilly, 14 T.C. 1066, affirmed 188 Fed. (2d) 269. The particular statute of the State of Indiana which the respondent argues has been *314 violated is set forth in the margin. [1] That statute prohibits a permittee engaged in the sale of alcoholic beverages from engaging in certain discriminatory practices, such as "granting any price, discount, allowance or service charge which is not available to all purchasers at the same time." [Italics supplied.] The record establishes that the Corporation's policy was to allow a discount to customers purchasing 300 or more cases of beer per month. *315 The rate of discount started at 300 cases and was graduated up to 500 cases. The maximum rate was a flat 10 cents per case. The "quantity discount" was available alike to all customers purchasing the minimum quantity of 300 cases per month. The evidence shows that in the taxable year 1943 only three customers became entitled to the discounts. Since the discount was available to all purchasers alike, we think it clear there was no violation of the Indiana statute above quoted. The record reveals that the "quantity discounts" were allowed to meet competition and preserve the Corporation's business, since other operators were granting discounts to customers. In general, expenses paid or incurred in earning income and which benefit the business are allowed as ordinary and necessary expenses of the business unless the payment frustrates sharply defined national or state policies prescribing particular types of conduct. Commissioner v. Heininger, supra.The case of Polley, et al. v. Westover, supra, relied upon by the respondent, rather supports the petitioners. It was there held that quantity cash discounts allowed by wholesaler liquor dealers to retail buyers *316 in accordance with trade custom were not in violation of the California Beverage Control Act and were deductible as ordinary and necessary business expense. The case of Thomas B. Lilly, supra, has no application since it was there held that the so-called "trade discounts" violated public policy. We have found as a fact that the amounts paid in the taxable year by the Corporation as "quantity discounts" constitute ordinary and necessary business expenses and, therefore, we hold they are proper deductions under section 23 (a) (1) (A) of the Code. The final issue involves the amount of deductions to which the Corporation, transferor, is entitled in the taxable year for expenditures for legal and professional fees. The respondent disallowed $3,500 of the total amount of $5,342.50 claimed on its tax returns. Of the amount disallowed, $3,000 was for legal fees of the firm of Dunbar & Dunbar, and $500 was the amount paid to Samuel Johnson, an attorney and State Senator. The contention of the respondent with respect to the sum of $500 paid to Samuel Johnson is that such payment was made for political influence and not for legal services, and is therefore not deductible. *317 The evidence as to the purpose of the payment to Johnson is somewhat conflicting. The testimony of Wesley Vosburgh, the revenue agent who made an examination of the return of the Corporation, is that Ralph Ferguson stated to him that the payments were "shakedowns" and that Johnson did not render any real legal services. Ferguson categorically denied making such statement. He testified that Johnson had handled the collection of an account and at different times had rendered legal assistance to some of the Corporation's customers at his request. Josephine Ferguson testified that Johnson had helped with getting permits for different customers and also suing on bad debts. On the state of this record we can not find that the payments to Johnson were for political influence. Accordingly, we have found the payment of $500 to Johnson was made for legal services rendered the Corporation and constituted an ordinary and necessary business expense. With respect to the further item of $2,750 claimed as a deduction for professional services rendered by Dunbar & Dunbar, the evidence is likewise conflicting. The record reveals that as of December 31, 1943, there was accrued on the books of the Corporation *318 the sum of $2,750 as attorneys' fees to Dunbar & Dunbar. On the same date a check in the amount of $750 was issued to such firm, the balance of $2,000 remaining as an accrual item. The witness Vosburgh testified that at the time he made his examination of the Corporation's returns, Ralph Ferguson stated to him that the legal services of Dunbar & Dunbar were on a contingency fee basis. Petitioners did not offer in evidence any supporting voucher, nor was any explanation given, why only $750 of the total amount of $2,750 alleged to be due such firm was paid on December 31, 1943. The Corporation had ceased doing business on May 31, 1943, and was closing its accounts as of the close of the year. Furthermore, the record shows that the balance of $2,000 was paid by the petitioners in individually at some later undisclosed date. We think the testimony of the witness Vosburgh is corroborated by other documentary evidence. Under date of January 24, 1944, the officers of the Corporation executed Articles of Voluntary Dissolution. Paragraph VIII therein purports to set forth "A complete itemized list of all the corporate debts and liabilities of the corporation existing at the time of the adoption *319 of such resolution and thereafter incurred, and the date and manner of payment of each such debt and liability." In such schedule the payment of $750 to Dunbar & Dunbar on December 31, 1943, is shown, but there is no mention of any additional unpaid liability to such firm. We, therefore, hold that the item of $2,000 has not been shown to be properly accruable in the taxable year. We hold that the Corporation expended in the taxable year 1943 for legal and professional fees the sum of $3,341, which constitutes ordinary and necessary business expense deductible under section 23 (a) (1) (A) of the Code. The petitioners have stipulated that each is liable, as transferee, for any tax deficiency determined against the Corporation, transferor. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Josephine Ferguson, Transferee, Docket No. 20341; Howard Brown, Transferee, Docket No. 20342; Iva Brown, Transferee, Docket No. 20343.↩
1. Burns Indiana Statutes - Annotated - 1933 (1942 Replacement): 12-402. Excise administrator - Duties - Commission - Functions - Duties and powers - Rules and regulations. - * * *
No permittee engaged in the sale of alcoholic beverages shall be a party to or assist in any transaction of sale or contract to sell alcoholic beverages which discriminates between purchasers by granting any price, discount, allowance, or service charge which is not available to all purchasers at the same time: Provided, however, That the foregoing shall not be construed to authorize or require any permittees to sell to any person or to any other permittee to whom he is not expressly authorized to sell under other provisions of this act.↩