Robert Knobel v. Commissioner.
Knobel v. Commissioner
Docket No. 29638.
United States Tax Court
T.C. Memo 1954-103; 1954 Tax Ct. Memo LEXIS 143; 13 T.C.M. (CCH) 680; T.C.M. (RIA) 54209; July 23, 1954, Filed *143 1. Held: Petitioner's system of accounting for its returnable containers did not accurately reflect income and the adjustments made by respondent in his determination are justified. Okonite Co., 4 T.C. 618, followed. 2. Propriety of certain ordinary and necessary business expenses claimed by petitioner in 1944, determined. 3. Held: Petitioner did not receive brokerage income during 1944 in the amount of $2,269.79 as determined by respondent. 4. Respondent's imposition of a 5 per cent addition to tax for negligence, reversed. 5. Respondent's imposition of addition to tax for failure to file a Declaration of Estimated Tax for 1944 or to make advance payments thereon, sustained. J. Alex Neely, Jr., Esq., and H. B. Moorhead, Esq., for the petitioner. James R. Harper, Jr., Esq. for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $33,536.79 in income tax of petitioner for the taxable year 1944 together with additions thereto of $1,676.84 for negligence and of $869.82 for failure to file a Declaration of Estimated Tax for 1944 or to make advance payments on the tax for such year. At the hearing both parties made certain concessions, *144 all of which will be reflected in a Rule 50 recomputation. Findings of Fact The petitioner, Robert Knobel, is an individual who filed his income tax return for the calendar year 1944 with the collector of internal revenue for the district of Florida. In 1943, petitioner entered the wholesale beer and wine business and he was engaged in this business during the entire year 1944. During such year the gross billing of wholesale wine and beer by petitioner totaled $557,673.35 after making allowance of $21,818.93 for credits allowed customers at the time of the purchases for containers returned. Petitioner is entitled to, and has been allowed a credit against, sales of $1,679.91, the amount of refunds due on containers which were returned in 1944, but for which no refund had been made at the end of 1944. Petitioner, in 1944, made refunds of sales totaling $1,066. During such year checks received for sales in the net amount of $436.74 were returned as uncollectible and charged back to sales. In the sale of beer, petitioner required a deposit of 75 cents for each case, which amount was refunded upon the return of the empties. Petitioner set up a reserve of $20,000 to cover such deposits. *145 This amount, set up as deposits payable, was deducted from sales. Petitioner reported sales totaling $528,030.65 of wholesaler beer and wine for the calendar year 1944. The petitioner reported income in the amount of $10,455.38 as a partner in the M. & R. Distributing Company. Respondent has denied petitioner was a partner and reduced his reported income by such amount. Respondent then added back $2,600 denominated "salary" received from M. & R. Distributing Company in 1944. Petitioner has acquiesced in such adjustments for the purposes of the present proceeding. An analysis of the expenses for the calendar year 1944, indicating the amount claimed by the petitioner on his individual income tax return and indicating the amount allowed by the respondent, is set forth in the following schedule: Expenditure
Reported
Allowed
Disallowed
Merchandise purchases
$442,657.61
$420,136.35
* *146 $22,521.26
Freight and unloading
44,283.46
43,386.29
897.17
Salaries and Wages not included as labor
10,264.70
10,264.70
Taxes on business and business property
40,195.24
40,195.24
Depreciation
55.33
55.33
Telephone and Telegraph
1,364.52
1,364.52
Delivery expense
7,570.52
7,570.52
Insurance
2,034.50
2,034.50
Advertising
1,186.76
778.81
407.95
Rent
2,250.00
2,250.00
Professional
500.00
500.00
Office expense
1,395.97
519.51
876.46
Sales and travel expense
1,355.97
722.12
633.85
Repairs and maintenance
445.18
314.96
130.22
Sundry expense
644.50
644.50
Total
$556,204.26
$530,737.35
** $25,466.91 At the end of the year 1944, petitioner had a certified public accountant to close his books of account, which accountant made year-end adjustments increasing petitioner's purchases from $301,201.63, as per the ledger account at December 31, 1944, to $442,657.61, as follows: Per Ledger Account as at 12/31/44
$301,201.63
Journal Entry #1 - paid by Mur-
ray Knobel
18,623.10
Journal Entry #2 - unentered bills
(Accounts payable)
20,495.07
Container purchases from bottle
company (glassware)
45,908.25
Container purchases from custo-
mers (empties refunds)
64,294.70
Container purchases in cases and
shelves
2,658.88
Total
$453,181.63
Less claim against Commonwealth
Brewery Co. for beer destroyed
10,524.02
Adjusted purchases
$442,657.61
A portion of the foregoing information was obtained by the accountant from the checks of petitioner's father, Murray Knobel. Respondent determined that petitioner received unreported *147 brokerage income in 1944 in the amount of $2,269.70. Respondent has also determined that petitioner, during the year 1944, did not file a Declaration of Estimated Tax nor make any advance payments during such year on 1944 tax. Opinion VAN FOSSAN, Judge: This case presents five essentially factual questions. The first is whether petitioner's sales for 1944 were improperly understated on his return by the amount of $28,046.22 as determined by respondent. Petitioner admits his understatement of sales by approximately $8,000. He explains this as being due to an error made in determining the amount of outstanding accounts receivable at the close of the year. As to the remaining $20,000 in dispute, petitioner maintains that such amount is a proper reduction of his gross sales, since it represents his estimated liability to customers for deposits received therefrom for bottles and cases, which bottles and cases were included in his closing inventory. That is to say, petitioner's position is that the $20,000 should be a reduction of sales, and the bottles on which the deposits were made included in inventory. Respondent disagrees with petitioner's theory and contends that the proper method *148 of accounting for containers was not followed. He argues in defense of his determination that deposits received by petitioner for containers were, in reality, sales, and that when the refunds were paid, they constituted repurchases. Respondent, therefore, would include all such deposits within petitioner's sales for the year involved and add the reimbursements, when paid, to purchases. We agree with respondent. Petitioner's purpose in reducing his sales by $20,000 was to establish a reserve for deposits payable. But, it "* * * is settled that a reserve for returnable containers will not be allowed where it appears that there is an absolute sale of the container to the customers, subject to the customers' right to resell the container * * *" to the vendor. Okonite Co., 4 T.C. 618, 628, affd. 155 Fed. (2d) 248, certiorari denied 329 U.S. 764. See also La Salle Cement Co. v. Commissioner, 59 Fed. (2d) 361; Plymouth Brewing & Malting Co., 16 B.T.A. 123; Beadleston & Woerz, Inc., 5 B.T.A. 165. The preferred method in such cases and that which more clearly reflects income is to include the deposits in income as sales in the year they are received and to charge refunds made on returned *149 containers to purchases in the year in which such refunds are made. Okonite Co., supra; La Salle Portland Cement Co., 4 B.T.A. 438. The evidence on the present record discloses that the deposits charged by petitioner were billed to his customers just as other merchandise was billed. Petitioner did not specifically require that the containers should be returned, and although it was his intention that they should be returned, there was no specific retention of title to the containers here such as there was in Fort Pitt Brewing Co., 20 T.C. 1, affd. 210 Fed. (2d) 6. Thus, it is clear to us that in each instance there was a sale of the containers to the customers and a resale thereof to petitioner at the time the refund was made. It is likewise clear to us that petitioner's system of accounting for its returnable containers does not accurately reflect income. Respondent's action was justified, section 41, I.R.C., and it is sustained. It follows naturally that petitioner's inventory as of the end of the year 1944 should be reduced by the sum of $20,000, the amount by which petitioner's sales were increased by respondent. * *150 By amended pleadings, petitioner claims reductions of its sales on account of refunds on sales totaling $1,066 and of checks in the amount of $436.74 which provide uncollectible. The evidence on the point amply supports petitioner's claims that, due to an overcharge to customers of $1,066, sales were overstated and the refunds were made to correct the error. The deduction is approved. The checks which proved to be uncollectible were improperly deducted from sales. However, they represented a business loss to petitioner and were deductible as such. The next question involves respondent's disallowance, for lack of substantiation, of certain deductions claimed by petitioner as ordinary and necessary business expenses incurred during the year involved in the amount of $25,466.91. The expenses so claimed by petitioner and disallowed by respondent are set forth in our findings. We have carefully reviewed the evidence and are satisfied that petitioner has here adequately carried his burden and should be allowed additional deductions for business expenses totaling $21,331.26. The items comprising the difference between the amount claimed and that allowed were not adequately *151 substantiated. The next issue involves the propriety of respondent's determination that petitioner received unreported brokerage income during the year involved amounting to $2,269.79. The only evidence bearing upon the point is petitioner's testimony in which he categorically denied having received any such income or, in fact, having any knowledge of the matter whatever. Respondent offered no evidence in refutation and there appears no reason for disbelieving petitioner's sworn testimony. Respondent's determination as to this issue is, therefore, reversed. As to the question of whether respondent properly imposed the 5 per cent addition to tax for negligence pursuant to section 29 (a) of the Code, we are satisfied that no part of the deficiency was due to petitioner's negligence or to willful disregard of the Commissioner's regulations. Consequently, respondent's imposition of such addition is reversed. There remains the question of whether petitioner is properly liable for an addition to tax under section 294(d) of the Code for failure to file a Declaration of Estimated Tax for 1944 or to make advance payments on the tax for such year. The record is completely devoid of any affirmative *152 evidence on the point. Thus we have no alternative to sustaining respondent's determination with respect thereto. Decision will be entered under Rule 50. Footnotes
*. The $22,521.26 may be detailed as follows: ↩
Refunds claimed on empties
$17,583.26
Merchandise purchases
4,938.00
Total
$22,521.26
**. The expenses totaling $25,466.91 were disallowed because they were substantiated only as alleged cash payments or by checks drawn to cash or to the petitioner's father, Murray Knobel.↩
*. This sentence was added by an Order of the Tax Court dated October 18, 1954.