COLONIAL WHOLESALE BEVERAGE CORP., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Colonial Wholesale Beverage Corp. v. Commissioner
Docket No. 41859-86.
United States Tax Court
T.C. Memo 1988-405; 1988 Tax Ct. Memo LEXIS 431; 55 T.C.M. (CCH) 1736; T.C.M. (RIA) 88405; August 31, 1988. Andrew Shabshelowitz, for the petitioner. Barry J. Laterman, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined income tax deficiencies against petitioner for 1983 and 1984 in the amounts of $ 125,069.46 and $ 99.20, respectively. The primary issue presented is whether "bottle deposits" taken by petitioner in accordance with Massachusetts law are required to be included in income in the year of their receipt by petitioner. If we find that the deposits must be included in petitioner's income when received, then we must decide whether petitioner is allowed a deduction against the income and, if so, in what amount. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioner, Colonial Wholesale Beverage Corp. (hereinafter petitioner or the corporation), is a Massachusetts corporation with its principal *433 place of business in Massachusetts. It is a wholesale distributor of beer and wine products for the territory of southeastern Massachusetts and is the exclusive distributor, in its territory, of the brands it carries. During the taxable years at issue, it reported its income using the accrual method of accounting. On January 17, 1983 there became effective in Massachusetts a mandatory deposit law (hereinafter "the bottle law" or "the statute") enacted in 1981, governing beverage containers sold in Massachusetts. [1]Mass. Gen. Laws Ann. ch. 94, sections 321-327. Section 321 contains a number of definitions. The term "beverage" is defined broadly to include soft drinks and other non-alcoholic beverages. Beer and other malt beverages are also covered by the definition, but all other alcoholic beverages are explicitly excluded. The term "beverage container", as defined, is applicable to the containers herein (which appear to be primarily, if not exclusively, cans), and would seem to refer to disposable containers of "beverages", in contrast to the term "reusable beverage container", which is defined to refer to a container capable of being refilled and resold by a bottler. No reusable *434 or refillable beverage containers of any kind are involved herein. The purpose of the Massachusetts statute is to reduce litter in the Commonwealth by means of requiring a refundable deposit on beverage containers. Section 322 provides that "Every beverage container sold or offered for sale in the commonwealth shall have a refund value of not less than five cents". Section 323(c) requires a distributor to accept from a dealer any "empty beverage container of the type, size and brand sold by the distributor within the past sixty days" and pay therefor "the refund value of the beverage container plus a handling fee". The beverage need not have been purchased from petitioner in order for the container to qualify for a refund from petitioner. Moreover, although the law does suggest (at section 323(c)) that only a dealer who buys from a distributor (e.g., petitioner) can return containers to that distributor, it does not provide that such a dealer can be limited to returning to that distributor only that number of containers bought from it. The bottle law further states, in section 323(g), that a "distributor who receives deposits and/or *435 handling charges under this chapter shall segregate said deposits or handling charges in a fund which shall be maintained separately from all other revenues". In addition, the distributor is required by section 323(g) to "report on a monthly basis to the alcoholic beverage control commission in a manner prescribed by said commission, the amount of said deposits or handling charges received and the amount refunded". Recordkeeping and reporting requirements in connection with a distributor's collection and refund of deposits are set forth more specifically in regulations of the Alcoholic Beverages Control Commission (hereinafter "the ABCC") contained in title 204 of the Code of Massachusetts Regulations (204 Code Mass. Regs.). Section 3.03 of those regulations lists the following "Required Records": (1) Any bottler or distributor who sells to dealers any filled refundable beverage containers shall record for every such transaction the total refund value of the containers sold. Bottlers and distributors shall maintain records of all such transactions using standard and consistent accounting practices. (2) Any bottler or distributor who pays to dealers or redemption centers *436 of third-party collecting agents any refunds for empty beverage containers shall maintain records of all such payments using standard and consistent accounting practices. (3) Any bottler or distributor who pays to dealers or redemption centers or third-party collecting agents any handling charges shall maintain records of all such payments using standard and consistent accounting practices. In addition to the above provisions, section 3.04(1) of the regulations charges distributors with reporting "the value of the deposit fund for the reporting period". Such information is there required to be reported "No later than sixty (60) days after the expirations of each reporting period" and a reporting period is defined in section 3.02 as "one (1) calendar month". As part of each sale of beer to a retailer, petitioner collects a deposit of five cents per container. On return of the empty container to it, petitioner refunds the five cent deposit. A retailer who purchases from petitioner is not required to return a container, but can forgo receiving the refund of the deposit, as can the consumer who buys the beverage from the retailer. Also collected by petitioner as part of each *437 beer sale is a handling fee of two cents per container. A like handling fee is paid by petitioner to the retailer or return of the empty beverage container. Petitioner states on brief that it includes the handling fee (received by it) in its income and its treatment of the handling fee is not at issue. In three separate columns on petitioner's invoices there are listed (1) the deposit, (2) the "price" of the beer, which includes the cost of the can, and (3) the "amount", which represents the total payable by the dealer to petitioner, namely, the sum of the items in the first two columns. When accounting for sales of beverages, petitioner includes neither the deposit nor the handling fee in the sales price recorded although, as previously indicated, the handling fee is reported as income on its returns. Petitioner's invoices did not contain a title retention clause and nothing in the record indicates that it retained title to the containers when beverages were sold. In order to keep track of its receipt and refund of beverage container deposits petitioner set up on its books a separate liability account called the mandatory deposit reserve account [2] (hereinafter the "account" *438 or "reserve account"). When petitioner collects a deposit, it credits the reserve account. By credit to this account, the deposits are treated as liabilities, rather than income, when received. When petitioner returns a deposit, it charges the reserve account. At the end of petitioner's corporate year, it makes an adjustment to the reserve account. The purpose of the adjustment is to bring into income that portion of the deposits recorded in the reserve account that petitioner does not expect to be called upon to repay. The record does not disclose the precise statistical base that petitioner used in estimating the amount that it would thus retain in respect of the deposits on bottles that would not be returned *439 to it. The Massachusetts bottle law became effective on January 17, 1983. During 1983 petitioner made use of its reserve account, so that after deposits and refunds were recorded, the balance stood at $ 332,311.62. At the end of 1983, petitioner adjusted or reduced the reserve account by, and in a companion entry brought into income, $ 44,892.86 deposits that it expected would not be returned. That income appears to have been reported on petitioner's 1983 return as part of its "Gross receipts or sales". After the adjustment, the credit balance in the reserve account was $ 287,418.76. It is this balance which the Commissioner seeks to have included in petitioner's 1983 income. In 1984, the reserve account began with the $ 287,418.76 balance carried over from 1983. An additional $ 108,017.40 net deposits was credited to the account during 1984. At the end of 1984, a $ 107,770.40 adjustment was made to the account and that amount was taken into and reported in income. As in 1983, this income appears to have been reported as "Gross receipts or sales". It is the $ 247 difference between the net deposits received and the adjustment that petitioner took into income which the *440 Government contends should be included in income in 1984. The credit balance in the account after the year end adjustment was $ 287,665.76. Although the deposits and refunds were recorded in this separate reserve account in 1983 and 1984, the cash received and disbursed in those years with respect to refunds and deposits was not physically segregated from petitioner's other funds, but was commingled with them in its regular bank deposit account. Interest was neither paid nor earned on the deposits in that account. There is no indication or even suggestion in the record that such deposits were not available to and in fact used by petitioner during the tax years as freely for any purposes as any other funds at its disposal. By letter dated July 1, 1987, the Massachusetts Alcoholic Beverages Control Commission requested that petitioner identify "the separate fund in which such funds [bottle deposits] are placed" so that it could determine whether petitioner was in compliance with section 323(g) of the bottle law, which, as noted supra, p. 4, requires a distributor to "segregate said deposits or handling charges in a fund which shall be maintained separately from all other *441 revenues". Petitioner understood that it was the position of the Massachusetts authorities that it was important that the deposits be segregated because the Commonwealth believed they would revert ultimately to Massachusetts under its abandoned property law. However, petitioner has taken the position with the ABCC that the bottle law does not require it to maintain the deposits in a separate fund and that the maintenance of the reserve on its books constituted sufficient compliance therewith. Moreover, it is not at all clear that petitioner agrees with the ABCC that the deposits are subject to the abandoned property law, nor does it appear that the matter has been authoritatively settled. The abandoned property law provides that (Mass. Gen. Laws Ann. ch. 200A, sec. 3) "Any deposit of property with a person having a residence or place of business in the commonwealth * * * shall be presumed abandoned unless the owner has, within five years next preceding the date as of which reports are required by section seven" had any of a list of communications or transactions with the person holding the deposit. Section 7 charges the "person holding property declared *442 by this chapter to be presumed abandoned" with the filing of a report "no later than November first of each year". Property which a person lists in such a report is required by section 8A to be paid or delivered to the treasurer of Massachusetts by may first unless the owner of the property has by then established his right to receive property listed in the report. And section 9 calls for the treasurer to "proceed with the liquidation of property within one year after it has been surrendered to him". A person claiming an interest in the property is allowed by section 10 to establish that claim even after surrender of the property to the treasurer and its liquidation. In his notice of deficiency, the Commissioner increased petitioner's income by $ 287,418 in 1983 and $ 248 in 1984 to take into account "deposits you received on nonrefillable containers [which] were not reported on your income tax returns". The $ 287,418 increase in income in 1983 reflects the $ 287,418.76 balance (rounded) of the reserve account at the end of 1983. The $ 248 increase in income in 1984 purportedly represents the difference between the $ 108,017.40 net deposits taken in and $ 107,770.40 reported *443 in income via a year end adjustment to the reserve account. [3]
OPINION The Commissioner's adjustments in his notice of deficiency require petitioner to include in income in each year before us all bottle deposits received that year less the bottle deposits refunded that year. In each year, the corporation instead treated the deposits as a liability which was reduced when deposits were refunded. At the end of the year it further reduced the liability and included in income an estimate of the deposits it thought it would not be asked to return. The Government argues that the method of accounting used by petitioner "does not clearly reflect income" because it does not recognize the deposits as income when they are received. If the deposits are properly characterized as income then, even under its accrual method of accounting, petitioner must include the deposits in income in the *444 year they are received. See, e.g., Hagen Advertising Displays, Inc. v. Commissioner,47 T.C. 139, 148 (1966), affd. 407 F.2d 1105 (6th Cir. 1969); Farrara v. Commissioner,44 T.C. 189, 191 (1965); Automobile Club of New York, Inc. v. Commissioner,32 T.C. 906, 913 (1959), affd. 304 F.2d 781 (2d Cir. 1962). Thus, the initial question presented is whether the deposits are income. We conclude that they are income and includable as such in the year received. As a consequence, we also address petitioner's argument that it may offset the income accrued each year with a deduction for the liabilities it calculated it has incurred. 1. Whether the bottle deposits are includable in income when received.In determining whether the deposits made on the beverage containers here constitute taxable income when received guidance is provided by a number of cases in which the same issue was presented with respect to bottles and other goods. See, e.g., Farmers Creamery Co. v. Commissioner,14 T.C. 879 (1950); Okonite Co. v. Commissioner,4 T.C. 618 (1945), affd. 155 F.2d 248 (3d Cir. 1946), *445 cert. denied 329 U.S. 764 (1946); Wilson v. Commissioner,T.C. Memo. 1986-140, 51 T.C.M. 811, 55 P-H Memo T.C. par. 86,140; Knobel v. Commissioner,T.C. Memo. 1954-103, 13 T.C.M. 680, 23 P-H Memo T.C. par. 54,209; Ferguson v. Commissioner, a Memorandum Opinion of this Court dated March 7, 1952, 11 T.C.M. 213, 21 P-H Memo T.C. par. 52,066. Cf. Fort Pitt Brewing Co. v. Commissioner,210 F.2d 6 (3d Cir. 1954); Wichita Coca Cola Bottling Co. v. United States,152 F.2d 6 (5th Cir. 1945), cert. denied 327 U.S. 806 (1945); Nehi Beverage Co. v. Commissioner,16 T.C. 1114 (1951). The goal of the analysis in those cases was to identify payments which should properly be applied to the sales price of the merchandise in computing taxable income. Thus, in accordance with the above cases, petitioner's bottle and can "deposits", like "deposits" made on other goods, are required to be taken into account in computing income when received if the containers are found to have been sold along with their contents. If it is found that the bottle was thus originally sold, then *446 any later return of the "deposit" made at the time of sale is considered to be a resale of the bottle. Okonite Co. v. Commissioner,4 T.C. at 628. By contrast, the deposits are not properly treated as income if the containers are not found to have been sold but if instead the deposits are determined to be merely security deposits taken in order to ensure the return of containers owned by the vendor, who temporarily parted with possession thereof. Whether the bottles were sold with the beverages involves a factual inquiry in order to determine primarily whether petitioner retained title to the beverage containers and whether it could compel its customers to return them. Wilson v. Commissioner,T.C. Memo. 1986-140, 51 T.C.M. 811, 55 P-H Memo T.C. par. 86,140; Knobel v. Commissioner,T.C. Memo. 1954-103, 13 T.C.M. 680, 23 P-H Memo T.C. par. 54,209; Ferguson v. Commissioner, a Memorandum Opinion of this Court dated March 7, 1952, 11 T.C.M. 213, 21 P-H memo T.C. par. 52,066. See Okonite Co. v. Commissioner,4 T.C. 618 (1945), affd. 155 F.2d 248 (3d Cir. 1946), cert. denied 329 U.S. 764 (1964). *447 We find that the amounts in controversy, although formally and familiarly labeled as "deposits" received by petitioner here, are properly treated as components of the total amount received by it on sale of its beverages in the computation of income from sales. [4]
*448 There is no evidence in the record which would suggest that petitioner kept title to the containers when it sold the beverages contained therein. A sample invoice submitted as part of the stipulation did not indicate that petitioner retained title to the containers. Moreover, no mark identifying the corporation as the owner of the containers appeared on the containers themselves. Cf. Wichita Coca Cola Bottling Co. v. United States,152 F.2d 6, 8 (5th Cir. 1945); Nehi Beverage Co. v. Commissioner,16 T.C. 1114, 1115 (1951). Further, the statutory scheme of the Massachusetts bottle law requires the distributor of beverages to accept from "any dealer any empty beverage container of the type, size and brand sold by the distributor within the past sixty days". Section 323(c). And, as indicated in section 323(b), it also expects a dealer to whom petitioner sells beverages to offer those beverages for sale to retail customers and to "accept from any person during his business hours any empty beverage container of the type, size and brand sold by the dealer within the past sixty days and * * * pay that person the refund value of each beverage container *449 returned". It thus requires the distributor to accept the containers returned regardless of whether they were purchased from the distributor and allows both the retail customer and the retail dealer to return containers at locations other than those at which the beverages were purchased. The workings of the law are, consequently, at odds with the idea that petitioner had any right or title to the specific beverage containers of the beverages which it sold or that it could require its customers to return to it those particular containers. The fact, emphasized by petitioner, that it is the exclusive distributor of the beverages sold by it in its territory can have no effect on the meaning or operation of the bottle law. That law does not differentiate between distributors generally and exclusive distributors. Thus, petitioner would have to accept containers tendered to it by a dealer notwithstanding that the beverage had been sold by another distributor elsewhere in Massachusetts outside of petitioner's exclusive territory. We conclude that petitioner sold the containers along with the beverages therein and that the deposits collected for them must be accounted for in the computation *450 of its taxable income for the year in which they were sold. Petitioner makes a contention based upon the fact that the Massachusetts abandoned property law (Mass. Gen. Laws ch. 200A) may require it ultimately to turn over the unclaimed deposits to the Commonwealth and that it is required meanwhile by section 323(g) of the bottle law to segregate the deposits "in a fund which shall be maintained separately from all over revenues". However, petitioner's president and chief financial officer plainly indicated at the trial that, although the ABCC in 1987 insisted upon the deposits being kept in a separate bank account, it was and continues to be petitioner's view that the mere maintenance of a "mandatory deposit reserve account" on its books was sufficient compliance with the Massachusetts statute. And he stated further that there was "currently" (as of time of trial in October 1987) a conflict between the wholesalers and the ABCC as to segregation. Moreover, it is far from clear that petitioner accepts the Massachusetts abandoned property law as being applicable to unclaimed bottle deposits. Petitioner's president did refer at the trial to the possibility that at some point the *451 state could "lay claim" to the unrefunded deposits. But he nowhere acknowledged that applicability of the abandoned property law to such deposits, and our own examination of the provisions of that law leaves us with some unresolved doubts as to its scope. Further, there is no showing that during the tax years 1983 and 1984 petitioner considered the deposits to be subject to the abandoned property law and that it was prepared to report the deposits under that law at the appropriate time. To the contrary, of telling significance was its practice of taking into income that portion of the deposits which it estimated at year's end would not be refunded. Plainly, petitioner considered them to be its own rather than that of the Commonwealth of Massachusetts. Where, as here, petitioner treats such deposits as its own they must be regarded as taxable income to it. The mere fact that, at some later time, it may be required to turn them over to the Commonwealth under the escheat laws does not prevent them from being treated as income when it has asserted dominion over them. Cf. Fidelity-Philadelphia Trust Co. v. Commissioner,23 T.C. 527, 531 (1954); Bituminous Casualty Corp. v. Commissioner,57 T.C. 58, 90 (1971). *452 See generally Growers Credit Corp. v. Commissioner,33 T.C. 981, 996 (1960). If the deposits must be turned over to the Commonwealth in some later year, petitioner may be able to take a corresponding deduction at that time. Fidelity-Philadelphia, 233 T.C. at 532. Under our income tax law, taxable income is computed on an annual basis. "Congress has enacted an annual accounting system under which income is counted up at the end of each year". Healy v. Commissioner,345 U.S. 278, 284 (1953). See also Burnet v. Sanford & Brooks Co.,282 U.S. 359, 363 (1931). Income is not computed on a transactional basis or for a period in excess of a year, except to the extent that Congress has specifically provided, as, for example, in the case of long term contracts, or income averaging, or carrybacks and carryforwards. No such exception was provided for situations like the one before us. Petitioner argues that the bottle deposit law of Michigan, Mich. Stat. Ann. section 18.1206(11)-(16), involved in Wilson v. Commissioner,T.C. Memo. 1986-140, 51 T.C.M. 811, 55 P-H Memo T.C. par. 86,140, and that of Iowa, *453 Iowa Code chapter 455C, involved in Fred Nesbit Distributing Co. v. United States,604 F.Supp. 552 (S.D. Iowa 1985), are "significantly different" from that of Massachusetts, thereby "clearly distinguish[ing]" the cases. We have studied the laws of the three states, as well as the distinctions which petitioner raises, and we conclude that the purported distinctions do not call for a contrary result. Petitioner also argues that its accounting method, whereby it treats the deposits as a liability and later brings into income an estimate of those deposits which it will not be called upon to return, should not be disturbed. I relies upon three bottle deposit cases, Fort Pitt Brewing Co. v. Commissioner,210 F.2d 6 (3d Cir. 1954); Wichita Coca Cola Bottling Co. v. United States,152 F.2d 6 (5th Cir. 1945); Nehi Beverage Co. v. Commissioner,16 T.C. 1114 (1951), to justify its use of that method. Those cases, however, do not support petitioner's claim. They involved deposits which were not required to be included in income in the year received because they were paid in connection with transactions that were *454 not found to be sales of the bottles and thereby did not result in receipt of income. Use of the accounting methods approved therein, and which petitioner seeks to use here, is properly limited to the circumstances in which there is no sale of the container and consequently no income on receipt of the deposit, a circumstance which we have found does not exist here. Alternatively, petitioner relies on a line of cases distinguishing security deposits from advance payments made for future services or rent. See, e.g., Clinton Hotel Realty Corp. v. Commissioner,128 F.2d 968 (5th Cir. 1942); Indianapolis Power & Light Co. v. Commissioner,88 T.C. 964 (1987); Mantell v. Commissioner,17 T.C. 1143 (1952). Given that the critical inquiry here is whether the containers were sold and that the line of cases relied upon has no bearing on that point, we find that line of cases too remote to be of aid to us here. On the record before us, we find that petitioner gave up its rights in the bottles and cans on which deposits were paid, that they were sold with the beverages, and that the deposits are includable in the corporation's income on receipt. *455 2. Whether petitioner is entitled to a deduction with respect to any part of the deposits. Petitioner argues in the alternative that "in the event that the Court determines that the deposits were income when invoiced (i.e., all deposits were income), then the Petitioner should be allowed to claim a deduction in the amount of the deposits that could reasonably be expected to be returned in addition to those that were already returned during the year". The propriety of such a deduction depends on whether the liability is considered to be incurred under the "all events" test established in United States v. Anderson,269 U.S. 422, 441 (1926), and now embodied in sections 1.446-1(c)(1)(ii) and 1.461-1(a)(2), Income Tax Regs.[5] The "all events" test has two elements, each of which must be satisfied in order for accrual of the liability to be proper. The first element is that all events which establish the liability must have occurred; the second is that the amount of the liability must be capable of being determined "with reasonable accuracy". The parties focus their arguments on the first element. *456 To be deductible, the fact of liability must be "firmly established", United States v. General Dynamics Corp., 481 U.S.   ,    (April 22, 1987), "fixed and certain", Thor Power Tool Co. v. Commissioner,439 U.S. 522, 543 (1979), and "fixed and absolute", Brown v. Helvering,291 U.S. 193, 201 (1934). A taxpayer may not deduct "an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that have not occurred by the close of the taxable year." United States v. General Dynamics Corp., 481 U.S. at   . As to petitioner's liability to make the refunds, that liability did not definitively arise until the beverage containers were returned for the refund. Wilson v. Commissioner,T.C. Memo. 1986-140, 51 T.C.M. 811, 55 P-H Memo T.C. par. 86, 140; Fred Nesbit Distributing Co. v. United States,604 F.Supp. 552 (S.D. Iowa 1985). No liability was fixed at the earlier time when the deposit was made because, under the Massachusetts bottle law, both petitioner's customers and the ultimate retail consumer had no obligation to return the bottles and cans, but could dispose *457 of them in any way they liked. Petitioner's liability was merely contingent until a container was returned. Only if and when the container was returned did petitioner's liability to refund the deposit become fixed. Any deduction of a reserve under these circumstances would amount to no more than the deduction of "a mere estimate of liability" based on events which had not yet occurred, United States v. General Dynamics Corp., 481 U.S. at   , rather than the deduction of a fixed liability as is required under the "all events" test. Moreover, the possibility that petitioner might at some future time be called upon to pay over any unclaimed deposits to Massachusetts under its escheat law does not warrant any deduction at this time. There is no indication that petitioner has acknowledged the application of the escheat law to such deposits. Moreover, petitioner's president stated at the trial that "At some point the state could still lay claim to those unclaimed deposits under the basis of the requirement of segregating those deposits". Other distributors, as well as petitioner, dispute the segregation requirement which petitioner obviously understands to be the basis of *458 an escheat claim. Such claim would appear to be contested at this time, and there is no basis for a finding that petitioner did not contest or would not have contested such liability in 1983 and 1984. In these circumstances, the possibility that there might be a potential liability at some future time would not justify the accrual of a deduction in respect thereof for the tax years. Security Mills Co. v. Commissioner,321 U.S. 281, 284 (1944); Dixie Pine Products Co. v. Commissioner,320 U.S. 516, 519 (1944). Decision will be entered for the respondent.
Footnotes
1. 1981 Mass. Acts ch. 571, sec. 5. ↩
2. Although it is not explicitly so stated in the stipulation, the fair inference therefrom is that the reserve was set up to deal with the deposits and refunds mandated by the Massachusetts bottle law and that entries to it reflect deposits and refunds under that law only. Petitioners had at one time taken deposits on refillable containers and these deposits were accounted for in a similar manner, but not through the use of the mandatory deposit reserve account. ↩
3. The amount the Commissioner included in petitioner's income in 1984, $ 248, is one dollar more than this $ 247 difference. The discrepancy appears to be due to incorrect rounding, by including $ 287,418 in petitioner's 1983 income although the balance in the account that year was $ 287,418.76. ↩
4. In the context of this case it would appear to be a matter of mere terminology as to whether the amount in controversy is regarded as referring to a separate item of income denominated as "deposits" or to a component of the total amount received on sale of the beverage which is used in determining the amount of income on sale. To the extent that petitioner itself included a portion of the amount of deposits in income (based on its expectation as to the number of containers that would not be returned to it) it in fact included such amount in its "Gross receipts or sales" on its Form 1120 in the computation of its "Gross profit" from "goods sold", and not as a separate item of "Other income". Accordingly, regardless of how the item in controversy is labeled or classified for purposes of computing petitioner's "Total income" the result would be the same. However, since the parties and a number of the cases have referred to the issue in terms of whether the deposit itself constitutes income, we will for convenience do the same here, notwithstanding that in our judgment the real issue is whether the deposit is merely one of the components of the amount received on sale of the beverage. ↩
5. The "all events" test was incorporated in the Internal Revenue Code with the addition of section 461(h)(4) by section 91(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 600. The test was at the same time modified by sec. 461(h)(1) which provides that "the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs". 98 Stat. 598. The new sec. 461(h) was made effective "to amounts with respect to which a deduction would be allowable * * * after * * * the date of the enactment of this Act", i.e., July 18, 1984. Sec. 91(g)(1)(A) of Pub. L. 98-369, 98 Stat. 608. Neither party has discussed the effect of sec. 461(h) on petitioner's 1984 taxable year. Given the result reached herein and that the stated purpose of the new sec. 461(h)(1) was to limit the accrual of expenses attributable to activities to be performed or amounts to be paid in the future, even more than had been done in the decided cases, Committee on Finance, 98th Cong., 2d Sess., Explanation of Provisions Approved by the Committee on March 21, 1984, 266 (1984), we need not address the issue. ↩