ROGER C. BAYLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Bayly v. Commissioner
Docket No. 12023-78.
United States Tax Court
T.C. Memo 1981-549; 1981 Tax Ct. Memo LEXIS 189; 42 T.C.M. (CCH) 1216; T.C.M. (RIA) 81549; September 28, 1981. *189 Basis in property sold by petitioner and his then wife in 1976 determined. Roger C. Bayly, pro se. Daniel J. Wiles, for the respondent. DRENNEN
*190 MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1976 in the amount of $ 2,249. After concessions by petitioner the only issue remaining is whether petitioner realized a gain pursuant to section 1001(a) [1] as a result of the sale of property in 1976, and if so, the extent of that gain. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Roger C. Bayley (hereinafter petitioner) resided in Annapolis, Md., at the time of the filing of the petition herein. Petitioner *191 filed an individual Federal income tax return for the taxable year 1976. In 1964, petitioner and Dorothy E. Bayly (hereinafter Dorothy), petitioner's wife at all relevant times herein, purchased a home in Glen Burnie, Md. (hereinafter sometimes referred to as the Glen Burnie home), as tenants by the entirety, for $ 11,000. This home was used as their principal residence until petitioner and Dorothy separated in 1976. A court order in respect of the separation required that the home be sold and thereafter, on May 13, 1976, the home was sold to Mr. & Mrs. Nemeth for $ 42,800. Selling expenses in the amount of $ 4,174 were incurred, resulting in net proceeds from the sale in the amount of $ 38,626. Pursuant to a verbal agreement, these net proceeds were divided equally between petitioner and Dorothy. Petitioner did not purchase another residence to replace the one sold within 18 months prior to or following the date of sale. At the time the Glen Burnie home was purchased in 1964, it had only five rooms and an unfinished basement. Throughout the 12-year period in which such home was owned by petitioner and Dorothy, petitioner made substantial improvements to it. Since he was *192 an experienced construction worker, he was able to perform most of the work himself. In 1971 petitioner made certain improvements to the home (hereinafter 1971 improvements) which included the addition of two bedrooms and a lowered family room with a fireplace and a cathedral ceiling plus wall-to-wall carpeting and hardwood floors in all three rooms. All of the walls in these rooms were plastered and the electrical wiring and heat ducts in the existing portion of the home were extended to cover these new additions. Petitioner and Dorothy obtained a home improvement loan from Baltimore Federal Savings in the amount of $ 7,215 to help finance the 1971 improvements. However, these funds were not sufficient to purchase the materials needed to complete construction of the three new rooms. Consequently, petitioner expended additional sums to complete construction of the 1971 improvements, as well as for other improvements made to the Glen Burnie home throughout the 12-year period in which he resided therein. Unfortunately, receipts for the expenditures made in this connection were destroyed or stolen in 1976. After separating from Dorothy, petitioner left the country on business, *193 during which time his personal belongings were stored at a summer house in Mount Vernon, Md., which belonged to Dorothy's mother. During the winter months when the house was unoccupied, vandals broke in and either stole or burned or otherwise destroyed "everything" including receipts and records of the expenditures for the improvements made to the Glen Burnie home. Petitioner notified the Maryland State Police, and submitted to them a written report of the items which had been destroyed or stolen, including therein such records and receipts. Because of the loss of these records, petitioner could make only rough estimates of the amounts expended on the improvements he and Dorothy remembered making to the Glen Burnie home. These estimates were based on both his experience in the construction business and his and Dorothy's collective memories as to the cost of such improvements. Dorothy had been the bookkeeper for the family and had maintained the records of the expenditures incurred for the improvements to the home. Petitioner calculated that the total investment in the home, including the initial purchase price, exceeded $ 32,000. The improvements to the Glen Burnie home, *194 in addition to the 1971 improvements, and amounts petitioner estimated he expended thereon in addition to the home improvement loan funds, were described by petitioner as follows: Estimated Cost
Material Only [1]
Labor and Material 1. Extension of a concrete
driveway addition
$ 1,100
of a concrete patio and
walkways [2]
2. Chain line fence [3] 3. 14 feet by 10 feet utility
shed
675 4. Landscaping: 10 fruit trees,
2 poplar trees,
[4] 500
and 4 maple trees
5. Remodeled the main kitchen
by changing counter-tops,
[5] 1,800
ranges, and cabinets 6. Remodeled the living room
and a bathroon
375 7. Installed a new cast iron
sewer system
475 8. Added a storm door
96
9. Remodeled the basement,
including insulating it,
2,700
addition of a suspended
tile ceiling and a
bathroom [6]
10. Addition of a new kitchen
to basement
300
11. Materials for the 1971
improvements over and
3,100
above those purchased
with the home improvement
loan
12. New heat ducts [7]
$ 750
13. New breaker box and
electrical wiring [7]
500
14. Wall-to-wall carpeting
for all 8 rooms in the
1,900
house
15. Wallpaper and paint
250
Subtotals
13,271
1,250
Total
$ 14,521
*195 Additionally, petitioner expended $ 425 for a new washer and dryer. Because the records and receipts for these improvements had been stolen or destroyed, petitioner had to estimate, when preparing his income tax return for the taxable year 1976, the amount that had been invested in the home. Based on his estimations, he determined that the adjusted basis of the home exceeded the amount realized from its sale and therefore *196 did not report a gain from such sale on the tax return filed for the taxable year 1976. In his statutory notice of deficiency, respondent determined the home had an adjusted basis of $ 18,215 and thus had been sold at a gain of $ 20,411, of which $ 10,205 was allocable to petitioner. ULTIMATE FACT We find that the adjusted basis in the property petitioner and his wife sold in 1976 was $ 27,300. OPINION Petitioner offered no evidence to support deductions for interest claimed on his return and disallowed by respondent in the notice of deficiency. While we think petitioner probably paid some interest on various loans in 1976 we have no proof that he did and no idea how much, if any. Petitioner had the burden of proving entitlement to a deduction for interest, which he has failed to carry. Under the circumstances we cannot allow petitioner any deduction for interest. The only other issue for decision is whether petitioner realized a capital gain in 1976 on the sale of his Glen Burnie home and, if so, the extent of that gain. It is undisputed that petitioner and his then wife purchased the Glen Burnie home for $ 11,000 in 1964 and that they sold the property in 1976 *197 for $ 42,800. Selling expenses of $ 4,174 were incurred leaving the net proceeds of sale in the amount of $ 38,626. This amount was divided equally between petitioner and his wife. There is also no dispute that the property was not replaced within 18 months and that the sale does not qualify for nonrecognition under section 1034. Thus any gain from the sale is fully taxable under section 1001, one-half of it being taxable to petitioner. The amount of the gain in the excess of the amount realized over petitioner's adjusted basis in the property. Secs. 1001(a) and 1011. The adjusted basis is the petitioner's cost in the property increased for expenditures chargeable to capital. Secs. 1011, 1012, and 1016. Petitioner claims that he spent in excess of $ 21,000 in improving the property during the 12 years that he owned it, exclusive of his own labor. Since all of petitioner's records were destroyed, petitioner's claim is based on his memory and his rough estimates of what the various improvements would have cost material-wise. We have listed in our findings of fact the estimates he gave in his testimony for various items of improvement, which he said were in addition to the *198 $ 7,215 improvement loan. Respondent does not deny that petitioner made improvements to the property while he owned it, but limited the amount that he added to the cost basis to the amount of the improvement loan.Respondent's position is that most if not all of the improvements that can be added to basis were paid for out of the improvement loan. Respondent claims that there are duplications in the various items listed by petitioner, that some of the items were repairs and thus not capitalizable, and that petitioner's estimates were based on overall cost, including labor, which should not be included because petitioner did most of the work himself. We agree with respondent that there appear to be some repairs and duplications in petitioner's list. The cost of a new washer and dryer, which replaced older ones, cannot be classified as capital improvements.The amounts expended for wallpapering and painting could be capitalized and added to basis if they were incurred as part of an overall plan of remodeling or renovation. See Wehrli v. United States, 400 F.2d 682 (10th Cir. 1968); Jones v. Commissioner, 24 T.C. 563 (1955), affd. 242 F.2d 616 (5th Cir. 1957); *199 Cox v. Commissioner, 17 T.C. 1287 (1952); Chesapeake Corp. of Virginia v. Commissioner, 17 T.C. 668 (1951). However, if the expenditure for wallpapering and painting was incurred independent of such a plan, then absent a showing that such items standing alone either appreciably added to the value of the home or prolonged its useful life, it would not be considered a capital expenditure and would therefore not add to the adjusted basis of the property. [2] Sec. 1.263(a)-1(b) and 1.1016-2(a), Stewart Supply Co. v. Commissioner, 324 F.2d 233, 234 (2d Cir. 1963), affg. a Memorandum Opinion of this Court. While we recognize that petitioner probably had several plans for remodeling and renovating the home, we are not convinced by his testimony that the wallpapering and painting were either not a part of the cost already included in some of the major improvements or were done independently of an overall plan. Hence, these items cannot be capitalized. In view of the nature and extent ofthe remaining improvements made to the Glen Burnie home, it is our opinion that *200 any expenditures incurred therefore were for permanent improvements or betterments to the home within the meaning of section 1.1016-2(a), Income Tax Regs. The difficulty is in determining the extent of those expenditures, avoiding duplications and recognizing that the amounts used by petitioner were at best rough estimates. [3]
In 1971, petitioner obtained a home improvement loan to help finance the 1971 improvements in the amount of $ 7,215.He claimed that these funds were sufficient only to purchase materials for the "shell" of such improvements, i.e., the roof, floor, walls, and fireplace, and that it cost an additional $ 3,100 to complete construction of such improvements. However, petitioner also claimed, as a separate item, $ 1,250 for "heat ducts" and a "new breaker box and electrical wiring" in connection with the 1971 improvements. Since petitioner had asserted it cost him $ 3,100 to complete construction of such improvements, it is apparent that he claimed the same expenditure twice in calculating *201 the adjusted basis of the Glen Burnie home. Additionally, the $ 3,100 claimed expended to complete construction of the 1971 improvements included the cost of installing wall-to-wall carpeting in the three rooms added by such improvements. However, petitioner claimed, as a separate item, an expenditure of $ 1,900 for wall-to-wall carpeting for all eight rooms in the house, which would include the three rooms added by the 1971 improvements. Thus, there again appears to be, at least to some extent, a duplication of a claimed expenditure in calculating the adjusted basis of the home. [4]
However, even given the apparent duplication of some of the expenditures claimed, we are convinced that an amount in addition to the funds received from the home improvement loan was expended in making capital improvements to the Glen Burnie home while petitioner resided therein.Unfortunately, the receipts and records of *202 these expenditures were lost or stolen in 1976. However, petitioner, who was in the construction business, and Dorothy, who was the bookkeeper for the family while she and petitioner were married, used their combined experience and memories to estimate the amounts expended for all the improvements to the Glen Burnie home. We know that $ 7,215 was borrowed in respect of the 1971 improvements and in light of the testimony given and the record as a whole, find that this sum was insufficient to complete the construction of such improvements. Furthermore, we have no doubt that the expenditures made, both to complete construction of the 1971 improvements, as well as the other capital improvements made to the Glen Burnie home between 1964 and 1976, were substantial. But because of the apparent duplication of some of the expenditures claimed and the admittedly rough estimates used to calculate the amounts expended we are unable to determine with any exactitude the total amount invested in such home in the way of capital improvements. Therefore, applying the so-called Cohan rule and "bearing heavily" against petitioner, whose "inexactitude" is of his own making, we find that expenditures *203 for capital improvements to the Glen Burnie home, together with the home improvement loan, amounted to $ 16,300. [5]Cohan v. Commissioner, 39 F.2d 540 (1930). This amount, when added to the original cost of $ 11,000, yields an adjusted basis of $ 27,300. Therefore, a gain of $ 11,326 [6] was realized on the sale of the Glen Burnie home, of which $ 5,663 is allocable to petitioner. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue, unless otherwise indicated.↩
1. Petitioner had no labor costs with respect to these improvements as petitioner himself provided the necessary labor. ↩
2. Concrete cost $ 26 per yard. Petitioner did not present evidence as to how many yards he purchased. ↩
3. No evidence was presented as to the cost of this fence. ↩
4. Petitioner had no personal knowledge as to the cost of the trees. This amount is the estimate of the cost of such trees given to petitioner by Dorothy. ↩
5. Petitioner had a bill for $ 1,800 from Montgomery Ward which he claimed represented the purchase of these kitchen improvements. ↩
6. The basement was 24 feet by 30 feet and each tile was about 2 feet by 4 feet and cost approximately $ 1 per tile. ↩
7. These items were in respect of the 1971 improvements.↩
2. See Terrell v. Commissioner, T.C.Memo. 1979-222↩.
3. Petitioner was in the construction business and would be pretty well qualified to estimate the cost of such work if he was not relying so much on memory and generalizations.↩
4. Although it is possible that at sometime after the addition of three rooms, petitioner had wall-to-wall carpeting installed throughout the house, thereby replacing that originally installed in such rooms, no evidence in support of this position was presented by petitioner.↩
5. See Minchew v. Commissioner↩, a Memorandum Opinion of this Court dated Sept. 30, 1953. 6. ↩
Amount realized
$ 38,626
Adjusted basis
-27,300
Gain
11,326